REUBEN GLAZIER *vs.* CHARLES S. REED, WARDEN OF
STATE PRISON.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 9th, 1932—decided January 10th, 1933.

*Donald Gaffney* and *Harold E. Mitchell,* Assistant State's Attorneys, with whom, on the brief, was *Hugh M. Alcorn,* State's Attorney, for the appellant (respondent).

*Reinhart L. Gideon,* Public Defender, and *Charles E. Mahoney,* for the appellee (applicant).

MALTBIE, C. J.  The plaintiff, an inmate of the state prison, brought this petition against the warden, alleging that he was illegally confined.  The return states the following facts:  The plaintiff was, on January 13th, 1925, sentenced to the Connecticut reformatory for the crime of statutory burglary.  The sentence was an indefinite one and under such a sentence the statute fixes five years as the maximum period of confinement upon conviction of the offense with which he was charged.  General Statutes, § 1831.  On July 16th, 1926, after serving eighteen months, he was paroled.  On or about October 30th, 1926, he was arrested on a charge of assault with intent to rob; the directors of the reformatory informed the authorities that he was not to be returned to that institution but should be first tried upon the charge for which he was arrested; and at the December criminal term of the Superior Court for Hartford County he was tried, found guilty and sentenced to state prison for a term of not less than one nor more than three years.  On January 12th, 1927, the directors of the reformatory passed the following vote:  "At a meeting of the Board of Directors held at the Reformatory on January 12th, it was voted that Reuben Glazier be transferred to the Connecticut State Prison to serve the balance of his reformatory sentence, said sentence to take effect from and after the expiration of the one he is now serving."  He served thirty months of his sentence to the state

prison, received "good time of six months" and was discharged on June 10th, 1929. He was, however, held thereafter in the state prison on the unexpired portion of his sentence to the reformatory. After twenty-two months, on April 23d, 1931, he was paroled. On October 14th, 1931, he was arrested on a charge of obtaining goods under false pretenses and received a sentence of one year in jail, which was later commuted to five months. On the completion of this sentence, on June 13th, 1932, he was returned to the state prison as a parole violator and now is serving the unexpired portion of the sentence to the reformatory. To the return setting up these facts the plaintiff demurred on the ground that the plaintiff had served his full sentence to the reformatory, the trial court sustained the demurrer, judgment was entered for the plaintiff, and the respondent has appealed.

The reformatory law defines an inmate as any person sentenced to that institution until released from its control, including one on parole. General Statutes, § 1822. It also provides that "any inmate of said reformatory who shall persistently refuse to obey the regulations of said institution, and who shall appear to the directors to be incorrigible, may, upon order of said directors, be transferred . . . to the state prison, there to remain not exceeding in all the term for which such person might otherwise have been detained at the reformatory; provided . . . any person trans- ferred to the state prison shall be subject to the control of the authorities of said prison." General Statutes, § 1838. We entertain no doubt of the validity of the statute permitting the directors to transfer an inmate within the class described in the statute to the state prison. The possibility of such transfer is an incident annexed to the sentence to the reformatory and the determination of the existence of the circumstances

conditioning the authority of the directors to make such a transfer may properly be left to them. Such a determination differs in no essential respect from similar determinations which they must make when deciding whether an inmate within the walls of the reformatory should be paroled, or whether one on parole has violated its terms so that he is to be returned to it, or those which the authorities in control of the state prison must make in deciding whether an inmate of that institution is entitled to a commutation or diminution of his sentence for good behavior or has forfeited time earned by him in that way. General Statutes, § 1978, Cum. Sup. 1931, § 329a. Such functions are so far of an administrative nature that they may properly be reposed in the officers of these institutions. *Sheehan, Petitioner,* 254 Mass. 342, 345, 150 N. E. 231; *Pellissier* v. *Reed,* 75 Wash. 201, 204, 134 Pac. 813; *Cassidy, Petitioner,* 13 R. I. 143. The fact that the petitioner was not confined within the walls of the reformatory at the time the directors voted to transfer him to the state prison, would not in itself place him beyond their power to make the transfer. The regulations of the reformatory referred to in the statute include not only the regulations for the control of the inmates within the walls of the reformatory but also those which govern their conduct while upon parole. Whether or not the directors abused their discretion in ordering the transfer of the petitioner is a question not presented upon this record and one which hardly could be presented without a finding of the facts.

Where an inmate of the reformatory on parole commits another crime and is sentenced to state prison, upon his discharge from that institution he would be again subject to the control of the officers of the reformatory and subject to transfer to the prison. A

properly authorized person could undoubtedly arrest him at the door of the prison as a parole violator and at once turn him back to the prison officials. The statute does not designate any particular officer or person to make a transfer of a reformatory inmate to the prison. The law does not require useless formalities, and instructions to the state prison officials to hold such a prisoner upon the completion of his sentence to the prison, as an inmate of the reformatory transferred to it, would be effective and valid.

The principal contention of the plaintiff is, however, that from the time of the vote of the directors of the reformatory above quoted, until the expiration of the sentence to the state prison which he was then serving, the sentence to the reformatory and that to the prison ran concurrently. If this is so, the petitioner has served more than the maximum period under which he might be confined by reason of the sentence to the reformatory. It becomes necessary, therefore, to determine the effect of that vote. The petitioner contends that it is beyond the power of the directors of the reformatory to make a transfer to the state prison to take effect in the future and that therefore the vote is to be construed as a present transfer and the portion which directs that "the sentence" was to take effect at the expiration of the prison sentence he was then serving is to be disregarded as mere surplusage. This portion of the vote was an integral part of it, and cannot be treated separately. Either the whole vote was valid and effective or it was invalid and no proper transfer of the petitioner was ever made. But, passing that, it is the function of the directors of the reformatory to determine when a transfer shall be made but of course they do not actually make it. The vote authorizing the transfer must of necessity precede the actual transfer, or, to put it another way, every trans-

fer voted by the directors must be one to take effect in the future. Had the vote involved in this controversy used the word "transfer" in place of the word "sentence" in its concluding portion, there would be no room for any claim that the vote was invalid.

It is undoubtedly true that an inmate of the reformatory could not be transferred to the state prison for immediate imprisonment but with the service of his sentence to begin at a future day. But that is not the reasonable interpretation to be put upon the vote of the directors in this case. The vote was clearly not intended to bring about a present transfer; its language is that the petitioner "be transferred" not "is transferred" to the prison. The time when it is to take effect is fixed by the concluding clause. The purport of that clause is that he was to begin the service of the unexpired portion of his reformatory sentence at the expiration of his prison sentence. The vote was an authorization of a future transfer, to take effect at that expiration. As such, it was within the power of the directors to pass.

The petitioner began his service of the reformatory sentence at the expiration of his prison sentence, and unless he is entitled to sufficient credit for good behavior so that the length of his confinement exceeds the maximum period for which he might be confined under his sentence to the reformatory, he is not entitled to his release. Where an inmate of the reformatory is transferred to the prison, the maximum term of his sentence is not affected. Sentences to the reformatory are indefinite, the law fixing a maximum period of imprisonment, unless a sentence is to exceed five years. General Statutes, § 1830. The directors of the reformatory may parole an inmate at any time. General Statutes, § 1836. Upon the return of an inmate for breach of parole, the time he has been upon

parole before his return is not counted in determining the period he has served. General Statutes, § 1836. These incidents of a sentence to the reformatory are effective after the transfer of an inmate to the prison. Section 1838 of the General Statutes provides that a transferred inmate of the reformatory shall be subject to the control of the prison authorities. He therefore becomes subject to the conditions incident to the discipline of the prison. The section of the General Statutes particularly dealing with discipline in the state prison provides that "any prisoner" may earn a certain commutation or diminution of his sentence by good behavior and that when "any prisoner" is held under more than one conviction the several terms of imprisonment are to be construed as one continuous term "for the purpose of estimating the amount of commutation which he may earn." General Statutes, § 1978, Cum. Sup. 1931, § 392a. Such a commutation or diminution of sentence pertains to the discipline of the prison and these provisions apply to inmates of the state prison transferred there from the reformatory. For the purpose of determining the term of the imprisonment to be used in computing the allowance to be made for good behavior, the period of the sentence to the state prison and the unexpired portion of the reformatory sentence are to be added together. The statute is, however, silent as to when these allowances shall be credited to the prisoner. Where a prisoner is serving successive sentences to the prison, there would seem to be little or no practical difference between the situation created by crediting this allowance upon the separate terms and crediting it in diminution of the entire period of confinement. In the case of an inmate transferred from the reformatory, however, the difference in the nature and incidents of the two sentences would seem to require that, as was done in this case,

they should be regarded separately, time earned while serving a sentence to the state prison should be credited in diminution of it, and the balance of the time earned should be credited in diminution of the reformatory sentence. It does not appear, however, from the present record, that the petitioner is entitled to any allowance of time on his reformatory sentence for good behavior. The record fails to show that he has been confined in state prison a longer time than he should have been in order to serve the unexpired portion of his reformatory sentence.

There is error, the judgment is set aside and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.