## STATE OF CONNECTICUT
.vs.
## WILLIAM BROWN

Superior Court        New London County        File #3557

MEMORANDUM FILED AUGUST 19, 1938.

Arthur M. Brown, of Norwich, for the State.

Robert P. Anderson, of New London, for the Petitioner.

McEVOY, J.   As the pleadings now stand, the record shows that on August 16, 1938, a demurrer was filed on behalf of the respondent and that, on the same day, August 16, 1938, a return was filed on behalf of the respondent.   It would thus appear that both the demurrer and the return are, ostensibly at least, pending at the same time.   The purpose of a writ of habeas corpus is to obtain speedy and determinative action.   This rule is particularly applicable to the present case.   It would seem expedient to decide the matter upon the merits and, passing over whatever merit there may be in the demurrer, it is decided upon the allegations con-

tained in the writ in connection with the return. The facts are not in dispute.

On May 6, 1930, William Brown was convicted of the crime of statutory burglary in the Superior Court for New London County and was duly sentenced by that court to an indeterminate sentence in the Connecticut State Reformatory at Cheshire, and he was committed to the reformatory and remained there until the 25th day of January, 1932. On that day he was paroled.

Subsequently, and while on parole from the reformatory he was convicted on the 12th day of October, 1932, of the crime of receiving stolen goods and was sentenced to and served a period of 30 days in the New London County Jail; on September 21, 1937, he was convicted of the crime of breaking and entering in the night season in the Superior Court for New London County and was sentenced to and did serve ten months in the New London County Jail; thereafter, on the 28th day of May, 1938, he was convicted of the crime of statutory burglary and was sentenced to serve three months in the New London County Jail, which term he served with the exception of the allowance of 15 days for good behavior, thus completing that sentence on the 10th day of August, 1938.

On October 21, 1937, a warrant was issued by the superintendent of the Connecticut State Reformatory as the agent of its board of parole for the arrest and return to the reformatory of William Brown, designated as 3164, for the purpose of requiring him "to serve as much of the remainder of his sentence as the State Board of Parole shall hereafter determine."

This warrant was duly issued in proper form and order. William Brown is now being held in the County Jail of New London by John J. Sweeney in his capacity as sheriff of New London County by virtue of the warrant issued by the State Reformatory. William Brown is being held in no other way and for no other reason than by virtue of the warrant issued by the State Reformatory at Cheshire.

William Brown was originally convicted on May 6, 1930. The maximum time during which his indeterminate sentence might run, under the provisions of the law, was five years. If he had served that full time, his sentence would have expired on May 6, 1935. Before the expiration of that sentence he was, in the exercise of the discretion vested in the

board of parole of the Connecticut State Reformatory, paroled.

The purpose of parole is to enable the person placed upon parole to be free from actual physical confinement and to be at large, and, under those circumstances, to attempt, with the cooperation of the interested officials, to rehabilitate him- self as a member of society. Under these circumstances, if William Brown had observed the provisions of the parole, he would not now be in confinement. Not only did he not ob- serve the provisions of the parole, but he committed other offenses while on parole and for each one of these offenses he was apprehended and punished, in accordance with the law.

It is claimed, on behalf of William Brown, that the rearrest and present confinement of William Brown is a violation of the provisions of section 6559 of the General Statutes, Revision of 1930—at least it is claimed that this is so by analogy, if not directly.

It should be observed, however, that the statute provides, substantially, that "No person shall be prosecuted . . . except within five years next after the offense shall have been com- mitted . . . ." That section in its last three lines further pro- vides that "when any . . . information or complaint for any crime may be brought within any other time than is limited by this section, it shall be brought within such time."

The plain meaning of said section 6559 is that criminal pro- ceedings must be "commenced" within the statutory time, *State vs. Ward,* 49 Conn. 429, 437. This proceeding, was within the meaning of section 6559, supra, commenced within the statutory time.

The Legislature has seen fit to invest the directors of the State Reformatory with a very wide discretion in their treat- ment of those sentenced to that institution. Even the most cursory reading of section 1836 of the General Statutes, Re- vision of 1930, indicates its intention. In the first place it is provided, in the first sentence of that section, that "any in- mate of the reformatory may be paroled in the discretion of a majority of the board of directors . . . and the superintendent . . . under such rules and regulations as it may establish."

Supplementing this provision, it is further provided in the second sentence of that section that "While upon parole, such inmates shall remain in the legal custody and under the con- trol of the reformatory board of parole and may at any time

be taken back to the reformatory for any reason that shall seem sufficient to such board."

Under the provisions of section 1822 of the General Statutes, Revision of 1930, the meaning of the term "inmates" is definitely defined so that it "shall include all persons sentenced to the reformatory, until released from its control, including persons on parole." It would therefore appear that, for all practical purposes at least, William Brown was still an "inmate" of the reformatory during the whole term of his parole and while he was committing the various crimes which he did commit subsequent to the time when he was originally placed upon parole. Coming back to section 1836, supra, it should be observed that, in order to carry out the very apparent purpose of the act, the reformatory board of parole is not limited upon the question of parole as to time, because it is specifically provided in that section that the "inmate . . . may at any time be taken back to the reformatory . . ." The use of the words "at any time" indicates a definite purpose that the parole board shall be practically unlimited in its attempt to reform and restore the "inmate" to a place in society, if possible. This broad intent is further indicated by the subsequent use of the words "for any reason that shall seem sufficient to the board."

The use of those words indicates that the Legislature intended that the parole board should have every opportunity for the most minute and exact supervision. It is further provided in that section that "the police officers, constables and sheriffs shall arrest and hold any paroled inmate when so requested, without any written warrant."

The use of those words "without any written warrant" tends to confirm the meaning of section 1822, supra, that the "inmate", although on parole, is still an "inmate."

"The law does not require useless formalities, and instructions to the state prison officials to hold such a prisoner upon the completion of his sentence to the prison, as an inmate of the reformatory transferred to it, would be effective and valid." *Glazier vs. Read,* 116 Conn. 136, 141.

"The regulations of the reformatory referred to in the statute include not only the regulations for the control of the inmates within the walls of the reformatory but also those which govern their conduct while upon parole." *Ibid.* 140.

"Upon the return of an inmate for breach of parole, the time he has been upon parole before his return is not counted in determining the period he has served." Ibid. 142.

It should be observed that William Brown was placed upon "parole" and not upon "probation." The expressed intent of the Legislature in enacting section 1836 of the General Statutes, Revision of 1930, is shown by a comparison of that section with the provisions of section 6518 of the General Statutes, Revision of 1930, which has to do with probation. There the term of probation is specifically limited to one year. This is to be contrasted with the express provisions of section 1836 where it is definitely stated that the inmate may "at any time" be taken back to the reformatory.

It is claimed that the decision in *People ex rel. Kohler vs. Kidney*, 223 N.Y. 666, is determinative of the present action. The writ was sustained in that case because the petitioner "was never arrested by virtue of a parole warrant as required by section 217 of the Prison Law."

It is true that, after deciding the case upon that valid ground, the court went further and said (p. 667): "that when brought before the prison board his (the petitioner's) maximum sentence under the original charge had expired and, therefore, all authority over him as a parole prisoner had ended . . ." That decision was of course rendered under the provisions of the law of New York. It is apparent that that law was not the same as the Connecticut law, and particularly that the New York law differed from the provisions of section 1836, supra.

When William Brown was permitted to go at large upon parole, his future fate was then left entirely in his hands. instructions given to him, he could remain at liberty. If not, If he fairly complied with the provisions of parole and the he was still an "inmate" and could be actually physically confined at any time within the discretion of the reformatory board of parole. He elected not to comply with the provisions of parole. This election was a waiver. A waiver is a voluntary relinquishment of a known right.

His position was not unlike that of the petitioner in the case of *Cappola vs. Platt*, 123 Conn. 38, where, at page 41, our Supreme Court said: "That he received permission from the probation officer to come to Connecticut made his entry to this State no less a voluntary act, and when he violated

here the terms of his parole he voluntarily surrendered the benefit of clemency which had been extended to him." This case differs from *Ex parte* Wernhause, 202 Mo. App. 245, 216 S.W. 548, cited in the case of *Cappola vs. Platt,* because an examination of the record in that case shows that previous to the time when Wernhause was claimed to have become a fugitive from justice that he had, in fact as well as in law, made his peace with the probation officer and the other officials by paying the entire sum of one thousand dollars, as restitution for the money which he had taken, and that, when he made the final payment of $450.00, as restitution, he was given a receipt in full and he was then expressly released. That case, therefore, is not in point.

If the writ were sustained in the present case, it would seriously interfere with the fundamental purpose and the function of the board of parole of the State Reformatory, and it would also prejudice the opportunity, of which an inmate of the reformatory may avail himself under the broad provisions of the parole system. The tendency should be to sustain and encourage the board of parole to cooperate with those placed in this institution and not to discourage such action.

In this action the petitioner was represented by Robert P. Anderson, Public Defender from New London County, and the respondent by Arthur M. Brown, Esq., State's Attorney for New London County and, since the matter arose in New London County, the papers are being filed with the Clerk of the Superior Court for that county and will be lodged there.

For all the reasons stated, the writ is dismissed, and judgment may enter accordingly.