# THE ATTORNEY GENERAL
## OF TEXAS



Gerald C. Mann
ATTORNEY GENERAL

Honorable Charles W. Castner, Chief
Eleemosynary Division
State Board of Control
Austin, Texas

Dear Sir:

Opinion No. O-2746
Re: (a) Transfer of children by
Board of Control from reforma-
tory to epileptic hospital or
insane asylum;
(b) Transfer of children by
Board of Control from Waco
State Home or State Orphans
Home to reformatory.

We have given careful thought and attention to the request contained in your letter of September 16, 1940, for the opinion of this department upon the matters set forth above.

Your first question is whether or not Section 4 of Article 5143e, Vernon's Annotated Civil Statutes, authorizes the State Board of Control to order the transfer of inmates from either the Gatesville State School for Boys or the Gainesville State School for Girls to the Austin State School for the Feeble Minded, the Abilene State Hospital for the Epileptic or any of the State institutions for the insane without there first being obtained an adjudication of insanity or epilepsy and an order of committment to the proper institution by a court of competent jurisdiction.

Section 4 of Article 5143e reads as follows:

"Whenever any girl between the ages of ten (10) and eighteen (18) years or boy between the ages of ten (10) and seventeen (17) years shall be tried or brought before any juvenile court upon indict-ment or information or before the District Court on petition of any person in this State or the Humane Society or any institution of a similar purpose or character, charged with being a delinquent child as this term is herein defined, the Court may, if in the opinion of the judge, the Juvenile Training School is the proper place for him, if a boy, or the Girls' Training School is the proper place for her, if a girl, commit such person to the Juvenile Training School for boys or the Girls' Training School for girls during the minority of said person. No per-son shall be committed to either school who is feeble-minded, epileptic or insane, but if so com-

mitted the State Board of Control shall have the authority to immediately transfer to the proper eleemosynary institution. Any person committed to either school who is afflicted with a venereal, tubercular or other communicable disease shall be assigned to a distinct and separate building of the institution and shall not be allowed to associate with the other wards until cured of said disease or diseases. No person shall be admitted to either of said schools until he or she has been examined by the school physician and such physician has issued a certificate showing said person's exact state or condition in reference to said qualifications hereinabove enumerated." (Underscoring ours)

Note that Section 4 provides in haec verbae for the exclusion of minors who are feeble minded, epileptic or insane; and authorizes the Board of Control to transfer immediately to other proper eleemosynary institutions inmates found to be so afflicted. We have carefully scrutinized this provision with a view toward determining its constitutionality if it is to be construed as giving the Board summary authority to effect a transfer without a judgment as to the mental state or health of the minor by a court of competent jurisdiction. We have determined that the Board is possessed of authority to effect a summary transfer and that the provision is constitutional.

It is established law in other jurisdictions that an administrative or executive board is not acting in violation of due process of law nor usurping a judicial function in summarily transferring pursuant to statutory provisions similar to ours minor individuals from reformatories to which they were committed to prisons and penitentiaries when upon executive determination it is decided that they are incorrigible or that their presence is detrimental to the interests of the other inmates. Ex parte Cassidy, 13 R. I. 143; People v. Warden, 183 N. Y. Sup. 882; People v. Gorofsky, 183 N. Y. Sup. 885; In re Johianane, 183 N. Y. Sup. 884; Ex parte Canary, 116 Wash. 569, 200 Pac. 307; Flexier v. Reed, 116 Conn. 136, 163 Atl. 766; Sheehan v. Superintendent, 254 Mass. 342, 150 N. E. 231; Uren v. Roach, 47 Wyo. 335, 37 Pac. (2d) 793, 95 A. L. R. 1448; Re Murphy, 62 Kan. 422, 63 Pac. 428, overruling Re Dumford, 7 Kan. App. 89, 53 Pac. 92; State v. Wolfer, 119 Minn. 368, 138 N. W. 315; 42 L. R. A. (N. S.) 978 Ann. Cas. 1914A, 1248; Stagway v. Riker, 84 N. J. L. 201, 86 Atl. 440; Re Linden, 112 Wis. 523, 88 N. W. 645. Contra, People v. Mallery, 195 Ill. 582, 63 N. E. 508, 88 Am. St. Rep. 212.

Underlying the majority rule are certain fundamental propositions upon which the answer to our present inquiry depends. While it is true that no person, man or

child, may under our Constitutional system, be deprived of his liberty without due process of law and that the delinquency laws will be construed strictly when they purport to restrain the liberty of a child (Phillips v. State, 30 S. W. (2d) 790; Ex parte McDowell, 76 Tex. Cr. Rep. 1, 172 S. W. 213; Ex parte Douglas, 109 Tex. Cr. Rep. 463, 5 S. W. (2d) 153; 15 Tex. Jur. 6); nevertheless, a child having once been judicially declared a "delinquent" by due process of law, it becomes a ward of the State and the State assumes the position of parens patriae. Ex parte Douglas, 5 S. W. (2d) 153. The constitutional limitations upon restraint of the liberty of minors are negligible once the State by due process becomes their foster parent. As stated in Ex parte Peterson (Sup. Ct. Minn. 1922) 151 Minn. 467, 187 N. W. 226:

"Children are always under more or less restraint. In the parental home and in the school they may not come and go as they please. And so when it is necessary for the State to step in and perform the parental duty the liberty of the child may be circumscribed." (Underscoring ours)

As stated in Barry v. Hall, 68 App. D. C. 350, 98 Fed. (2d) 222, " * * * Confinement in a mental hospital is as full and effective a deprivation of personal liberty as is confinement in jail;" and it has been suggested, moreover, that a distinction lies between transfer from one penal or correctional institution to another as the welfare of the child and his fellow inmates may dictate, and transfer from a penal institution to an insane asylum.

We have found only two reported cases in which the constitutionality of a summary transfer of the latter type has been passed upon.

In State v. Cooke, 167 Tenn. 253, 68 S. W. 933, the Supreme Court of Tennessee held that a statute providing for the transfer of an insane person from the penitentiary to a hospital for the insane upon a finding by the superintendent and physician of the prison that the convict is insane does not violate a state constitutional provision that no one shall be deprived of his liberty but by the judgment of his peers. The court said:

"We do not think, under this section of the Constitution, that the rights of the convict were transgressed by his transfer from the penitentiary to the hospital for the insane. He had already been deprived of his liberty for a term of years by the judgment of his peers. The Constitution did not confer any right upon him to select his place of confinement. It was entirely competent for the Legislature to provide that he be removed from the penitentiary to the hospital for the insane when, upon medical examination, his condition

required. Such a transfer was in his own interest, carrying him to a place where he could have better treatment and care."

In Ex parte Goboraky (Sup. Ct. Ver., 1938), 199 Atl. 757, petitioner in an application for writ of habeas corpus contended that the following statute under which he was transferred from the penitentiary to the insane asylum was unconstitutional as a deprivation of liberty without due process:

"When a person confined in the state prison, house of correction, Vermont Industrial School or county jail for a specified time or for life, becomes insane, he may be removed to the Vermont State Hospital for the Insane only upon the order of the Governor, based upon such expert examination as to insanity as the Governor directs, there to remain until the expiration of the term for which he was committed."

The court distinguished from the present cases where a person in full enjoyment of his liberty is committed to a state hospital for the insane without notice and hearing (e.g., see Barry v. Hall, 68 App. D. C. 350, 98 Fed. (2d) 222) and stated:

"As to petitioner's third objection, it clearly appears that the object and purpose of the statute is to provide a proper and efficient method of transferring a prisoner from the State prison to the Vermont State Hospital for the Insane, when it shall appear to the proper officer that the welfare of such prisoner and the best interests of other prison inmates may require. Such transfer does not deprive him of his liberty; that is done by the original sentence and the provisions of the statute in question form a part of such sentence. Under the circumstances here involved, the determination of the question as to the petitioner's sanity was an administrative function and under the statute above quoted could be lawfully exercised by the Governor without notice to the petitioner or giving him opportunity to be heard or to present evidence as to his insanity. People ex rel Gorosaky v. Warden, Supt., 183, N. Y. S. 885; Stagway v. Riker, 84 N. J. L. 201, 86 Atl. 440; Pellissier v. Reed, 75 Wash. 201, 134 P. 813; Uram v. Roach, 47 Wyo. 335, 37 P. (2d) 793, 95 A. L. R. 1448; People ex rel Stephani v. North, supra."

In Palmer v. Circuit Judge, 83 Mich. 528, 69 . E. 115, the court approved of the summary transfer without notice

and hearing of an insane girl from the reformatory to the insane asylum. No constitutional questions were raised or passed upon.

It cannot be gainsaid that the Legislature may constitutionally provide for the segregation within an institution of those in healthy and unhealthy conditions, and from what has been said and under the authorities set forth, it is the opinion of this department and you are respectfully advised that under Section 4 of Article 5143a, supra, the State Board of Control may order transferred from either the State School for Boys or Girls to the epileptic hospital or an asylum for the insane and inmate in a state of health needful of the treatment that may be there provided.

In so holding we are not unmindful of decisions such as White v. White, 180 Tex. 570, 196 S. W. 508, L. R. A. 1918 A, 339, affirming 183 S. W. 369; and Loving v. Hazelwood (C. C. A. 1916), 84 S. W. 355, that there may not be a constitutional adjudication of insanity without an opportunity for trial by jury on the issue of insanity. We believe such decisions inapplicable here. We do not believe it to be the intent of the Legislature nor are we to be construed as holding that the summary transfer of inmates provided for in Section 4 of Article 5143a is to operate as an adjudication of insanity. Rather the State as _parens patriae_ may place a minor in such institution in his own interest where he may receive better treatment and care. His detention there in no event may exceed his minority. Upon attaining his majority if his condition be unchanged the regular procedure for adjudication and committment must be pursued.

We pass to your second question which is whether or not under Section 5 of Article 5143a, Vernon's Annotated Civil Statutes, the State Board of Control may lawfully authorize the transfer of a child, a resident of the Waco State Home or the State Orphans Home, to either the Gainesville State School for Girls or the Gatesville State School for Boys.

We assume that the children you speak of at this point have been lawfully committed to the Waco State Home as provided for in Article 3257 of Vernon's Annotated Civil Statutes which reads as follows:

"Whenever any child under sixteen years of age is brought before any juvenile court upon petition of any person within this State, charged with being a dependent or neglected child, the court may, if in the opinion of the judge the Home for Dependent and Neglected Children is the proper place for said child, commit such child to said Home during its minority. No child who is feeble minded, epileptic, insane or afflicted with a venereal, tubercular or

other communicable disease shall be assigned to
this institution until cured of such disease.  No
child shall be admitted to the Home until he has
been examined by the physician of the Home and
such physician has issued a certificate showing the
exact condition in reference to said qualifications.
The court committing any child to said Home shall
prepare a transcript of all proceedings and attach
thereto a certificate of the county health officer
of such county to said transcript.  If it be a
girl or baby or infant committed to said Home, the
judge of the court shall designate some reputable
woman to convey said girl, baby or infant to said
institution.  The cost of conveying any child to
said institution shall be paid out of the general
fund of the county from which it may be committed
but no compensation shall be allowed beyond actual
and necessary expenses of the party conveying and
the child conveyed."  (Underscoring ours)

Section 5 of Article 5143a, reads:

"All juvenile courts shall give preference to
those children of tender age, and said courts shall
not commit to said Home for Dependent and Neglected
Children any children under the age of sixteen
(16) years who are known to be habitual violators
of the laws of this State or who have been inmates
of any State juvenile correctional school, provided
however, that the State Board of Control is hereby
authorized to transfer to this Home from any State
juvenile correctional school any child of tender
years whose record is satisfactory, upon the recom-
mendation of the superintendent of such correctional
school or any interested citizen.  If the conduct
of any child in said Home becomes sufficiently un-
controllable as to impair the better interests of
other children in the Home, the Board, upon appli-
cation of the superintendent, shall have the au-
thority to transfer such child to any State Juvenile
correctional school admitting juveniles of similar
age and sex, and it shall be the duty of the respec-
tive superintendents to transfer, transport and
admit such child.  Said Board may transfer children
from said Juvenile Training Schools or said Home,
to the State Orphans' Home and from said Orphans'
Home to said Training Schools."  (Underscoring ours)

Article 3255a, Vernon's Annotated Civil Statutes
changed the name of the Home for Dependent and Neglected
Children to the Waco State Home and you will note that
Section 5 specifically authorizes the Board to transfer
children from the Waco State Home or the State Orphans
Home to the State juvenile correctional schools.  We have
examined this section as we did Section 4.  The same prin-
ciples are controlling.

In Phillips v. State (Ct. Cri. App., 1929) 20 S. W. (2d) 790, the court in speaking of the Juvenile Delinquency Act stated:

"The Act was designed for the welfare of juvenile offenders, its purpose being to afford an opportunity for reclamation and reform. It is remedial, not punitive. It was intended to restrain the criminal tendencies of the juvenile offender in their inception to the end that a fair opportunity might be afforded for the development of the elements of good citizenship. * * *."

It is our considered opinion that once a child has been lawfully committed to the Waco State Home as provided in Article 3257, or the State Orphans' Home, it may, subsequently, by order of the Board of Control acting pursuant to the authority vested in it by Section 5 of Article 5143a, transfer such child to the proper boys or girls correctional school. A child lawfully committed to the Waco State Home or the State Orphans' Home is a ward of the State, its guardian, and such child may be transferred to the proper correctional school by the Board for its own welfare and that of its associates without an adjudication of delinquency.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ James D. Smullen
James D. Smullen
Assistant

JDS:rw:jrb

APPROVED NOV. 6, 1940
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE
BY BWB, Chairman

This Opinion Considered
and Approved in Limited
Conference.