JERRY MAHER *v.* GEORGE A. CUMMINGS, WARDEN OF CONNECTICUT STATE PRISON

SUPERIOR COURT      HARTFORD COUNTY      FILE NO. 100536

Memorandum filed December 31, 1954.

*Ritter & Satter,* of Hartford, for the plaintiff.

*Abraham S. Ullman,* state's attorney, and *Arthur T. Gorman,* assistant state's attorney, for New Haven County, for the defendant.

RYAN, J. In this petition for a writ of habeas corpus, the plaintiff seeks his immediate release from the state prison or, in the alternative, a declaratory judgment determining the date on which his term in the state prison will expire.

There is no dispute on the facts. On April 5, 1949, the plaintiff was sentenced to an indefinite term in the Connecticut reformatory at Cheshire. On July 20, 1950, the plaintiff was paroled. On August 25, 1950, he returned to the reformatory and remained there until February 26, 1951, at which time he was again released on parole, having served one year, nine months and one day. The balance of his five-

year maximum sentence was three years, two months and twenty-nine days. On April 18, 1951, plaintiff was convicted of burglary and sentenced to the state prison for a term of not less than two nor more than four years. At the time of sentence, Judge Alcorn was informed of the fact that plaintiff was a parole violator and that a portion of his maximum sentence remained to be served. On July 2, 1952, the board of directors voted "to transfer Jerry Maher, C.R. #6598, to the Connecticut State Prison, there to serve the remainder of his reformatory sentence, said reformatory sentence to take effect from and after his minimum period at the State's Prison."

The respondent takes the position that plaintiff completed the minimum period of his state prison term on December 18, 1952, at which time he commenced serving concurrently the balance of his prison and reformatory sentences; that his entire state prison sentence was completed August 20, 1954; that from December 18, 1952, he had three years, two months and twenty-nine days to serve, which would make the terminal date of his maximum sentence, without "good time," March 16, 1956, and with "good time," September 3, 1955.

The plaintiff makes three claims as follows: 1. The plaintiff's two sentences ran concurrently from the date of his confinement in the state prison. 2. If the court does not so hold, it should find that the two sentences ran concurrently from July 2, 1952, when the board of directors of the reformatory transferred plaintiff to the prison. 3. For the purpose of computing a commutation of plaintiff's sentences under General Statutes, § 3002, his prison sentence and the balance of his reformatory sentence should be construed as one term.

In support of his claim that plaintiff's two sentences ran concurrently from the date of his confine-

ment in the state prison, he cites *Redway* v. *Walker,* 132 Conn. 300. It is true that, "in the absence of statute, where a person has received two or more separate sentences to imprisonment in the same penal institution and the judgments contain no provision that they shall run consecutively, they will be held to run concurrently." *Zerbst* v. *Lyman,* 255 F. 609, 610; *People ex rel. Clancy* v. *Graydon,* 329 Ill. 398; *Redway* v. *Walker,* supra. In the instant case, the plaintiff did not receive two or more separate sentences to the same institution. The first sentence was to the reformatory and the second to the state prison. For this reason the rule is not applicable.

The second claim of the plaintiff is that the sentences ran concurrently from July 2, 1952, when the board of directors of the reformatory transferred the plaintiff to the state prison. "It is undoubtedly true that an inmate of the reformatory could not be transferred to the state prison for immediate imprisonment but with the service of his sentence to begin at a future day." *Gazier* v. *Reed,* 116 Conn. 136, 142. The plaintiff claims that the effective date of the transfer is July 2, 1952. If this were so, the sentences would run concurrently from that date and plaintiff would be eligible for release on March 17, 1955. As in *Glazier* v. *Reed,* the language of the vote of the board of directors indicates clearly that it was an authorization of a future transfer to take effect "from and after his minimum period at the State's Prison." The fact that the original mittimus and plaintiff's institutional record were at the same time sent to the warden of the state prison indicates only that it was the intention of the board of directors to deposit with the prison officials the essential documents for use on the effective date of the transfer, namely, the expiration of plaintiff's minimum period at the state's prison, which occurred December 18, 1952.

The third claim is that for the purpose of computing a commutation of plaintiff's sentences under § 3002 of the General Statutes, his prison sentence and the balance of his reformatory sentence should be construed as one term. This statute provides in part, "Any prisoner may, by prompt and cheerful obedience to the rules of said prison, earn a commutation or diminution of his sentence as follows: Sixty days for each year, and pro rata for a part of a year, of a sentence which is for more than one year and not more than five years; and ninety days for the sixth and each subsequent year, and pro rata for a part of a year." There is a further provision as follows: "When any prisoner shall be held under more than one conviction, the several terms of imprisonment imposed thereunder shall be construed as one continuous term for the purpose of estimating the amount of commutation he may earn under the provisions of this section."

"For the purpose of determining the term of the imprisonment to be used in computing the allowance to be made for good behavior, the period of the sentence to the State Prison and the unexpired portion of the reformatory sentence are to be added together." *Glazier* v. *Reed,* 116 Conn. 136, 143. In that case, however, the reformatory sentence was "to take effect from and after the expiration of the term he is now serving." In the instant case, the vote of the board of directors was that the reformatory sentence "take effect from and after his minimum period at the State's Prison." It seems obvious that the board of directors meant by "minimum period" a term of two years less any "good time" earned by the prisoner as provided by statute. Since the prisoner, by earning "good time" of four months, completed his minimum term in twenty months, the addition of the unexpired portion of his reformatory sentence of three years, two months and twenty-nine days totals

less than five years. The ninety-day commutation for the sixth and each subsequent year cannot, therefore, come into operation.

Assuming without determining that the plaintiff continues to earn "good time" on the remaining portion of his sentence, he would be eligible for release on September 3, 1955. Since "good time" must be earned by the plaintiff and may, under the provisions of § 3002, be revoked in whole or in part by the warden and board of directors of the prison for any serious act of insubordination or persistent refusal to conform to prison regulations, there is no basis for a declaratory judgment at this time.

Judgment may enter for the defendant.