**The People of the State of Illinois, Plaintiffs-Appellees, v. Victor Lee Johndrow, Defendant-Appellant.**

Gen. No. 65–42.

Fifth District.

May 19, 1966.

Edward D. Groshong, of East Alton, and Emerson Baetz, of Alton, for appellant.

Joseph R. Bartylak, State's Attorney of Madison County, of Edwardsville (Leon G. Scroggins, Assistant State's Attorney, of counsel), for appellees.

MORAN, J.

Defendant-Appellant was found guilty of the crime of abortion in a jury trial in the Circuit Court of Madison County and sentenced to serve not less than three years nor more than six years penal confinement.

Ronald Stamper, an unmarried male, was responsible for the pregnancy of an unmarried eighteen-year-old girl. He testified that he went to the defendant's home in Cottage Hills, Illinois, and purchased several capsules to prematurely terminate the girl's pregnancy. When the capsules proved ineffective, he returned to the defendant who recommended surgical interruption of the pregnancy and told Stamper to rent a motel room and then "call me up and give me the number." Stamper rented a room at the Two Brothers Motel, called the defendant and agreed that he and the girl would meet the defendant at the motel at 8:30 Sunday evening, June 7, 1964.

Both Ronald Stamper and the girl testified they met the defendant at the prescribed time and place. The defendant, after describing the aftereffects of the "operation" to the couple, went to his car and returned carrying a clamp-on spotlight and a bag of instruments. Stamper then paid the defendant $150 for the "operation," and, at the girl's request, left the room during the "operation."

The girl testified that the defendant took a chair and turned it with the back toward the bed. He then attached a lamp with a round face, like a spotlight, to the chair and put a towel on the end of the bed. He then went into the washroom and washed some shiny things that looked like surgical instruments.

The girl testified that the defendant seated himself astride the chair at the foot of the bed on which she was lying, with the spotlight clamped to the back of the chair. He then used "(w)ell, he used something like tongs with, you know, things with prongs on them—two ends to them, to open me up before he could put the tube in." He then inserted the tube which was wrapped with toilet tissue into her vagina. He clipped off the end of this tube, leaving the remainder of the tube in the uterus.

Several days later the girl entered St. Joseph's Hospital in Alton, Illinois, complaining of extreme discomfort; she was suffering from loss of blood and peritonitis. Dr. Allen, one of the two gynecologists who attended the girl, testified she was suffering the aftereffects of an abortion. The fetus had been expelled as a result of the "operation," but the unexpelled placenta caused infection, high fever and hemorrhaging.

When information of the abortion was communicated to the police, a search warrant was issued; a search conducted pursuant thereto uncovered a clamp-on spotlight and surgical instruments in the defendant's car and home. Several of the surgical instruments were designed for use in vaginal surgery, including a bivalve speculum, and three different types of uterine dressing forceps. These were introduced into evidence over the objection of defendant.

Dr. Allen identified one of the instruments as being a bivalve speculum which is used in the medical profession to visualize the cervix of the uterus by insertion into the vagina; another instrument as a uterine dressing forceps; another as a uterine dressing forceps with a different curvature and another as a straight uterine dressing forceps. He also identified another object as a rubber catheter used to drain the bladder but which could be inserted into the uterus to act as a foreign body and produce abortion. The trial judge sustained defendant's objection to the introduction of this exhibit into evidence. Dr. Allen also stated that there were two small puncture marks on the girl's cervix which could only have been made by a tenaculum, an instrument used in vaginal surgery. The search of defendant's car and home failed to produce such an instrument.

Defendant testified he had never seen Ronald Stamper or talked with him on the phone. Ronald Stamper's telephone bill shows two toll calls from Stamper's

77

Bridgeton, Missouri, number to the defendant's Illinois number on June 9, 1964, and June 11, 1964. Defendant denied performing an abortion on the girl and denied ever seeing her. The girl, however, identified the defendant by his looks and voice in a "lineup" conducted in her hospital room.

Defendant first contends that it was prejudicial error to introduce the surgical instruments into evidence because the doctor testified that the marks on the girl's cervix could only have been caused by a tenaculum.

The indictment charges the offense of abortion "in that he used an instrument, a further description of which is unknown to the grand jury." Dr. Allen testified that in his expert opinion the marks upon her cervix could only have been made by a tenaculum; he did not testify a tenaculum had to be or was the only instrument that could have been used in the abortion. The girl testified that the defendant washed several glittering surgical instruments in the basin at the motel; that one of these instruments was "a thing like tongs with prongs on them" which was used to open her up before he could insert the tube.

■ In our opinion these instruments were admissible in evidence to show that the defendant could have used one or a combination of them to commit the abortion. Wharton, Criminal Evidence, 12th Edition, Volume I, page 298. Not every forty-year-old roofer possesses instruments commonly used by the medical profession for vaginal surgery. This evidence also corroborates the girl's testimony concerning the type of instruments used upon her in the abortion. The relevancy of the evidence to the case is clear.

The defendant also contends that Ronald Stamper was an accomplice in the abortion and when the People's case is based upon the testimony of an accomplice, a mandatory, cautionary instruction concerning the ac-

complice's testimony must be given. Such an instruction was offered by the defendant's counsel and refused by the trial judge.

■ Since this contention was not made or advanced in the defendant's post-trial motion for a new trial, it is deemed waived. People v. Irwin, 32 Ill2d 441, 207 NE2d 76, and cases cited therein.

For the foregoing reasons the judgment of the Circuit Court of Madison County is affirmed.

Judgment affirmed.

GOLDENHERSH and EBERSPACHER, JJ., concur.