**People of the State of Illinois, Plaintiff-Appellee, v. Edward J. Mirmelli, Defendant-Appellant.**

**Gen. No. 51,517.**

First District, Fourth Division.

September 23, 1970.

2

4

John P. Coghlan, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, James R. Truschke, Thomas J. Immel, and Patrick T. Driscoll, Jr., Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED
Abortion. Ill Rev Stats 1963, c 38, § 23–1.

JUDGMENT
After a jury trial, defendant was found guilty and sentenced to a term of 1 to 5 years.

CONTENTIONS RAISED ON APPEAL
1. Defendant was deprived of a fair trial for the following reasons:

(a) He was prejudiced by the State's Attorney's reference in the State's opening statement to defendant's alleged confession, and by other improper conduct of the State's Attorney;

(b) He was prejudiced because six jurors read a newspaper article relating to defendant's alleged confession;

(c) Improper reference was made to a large sum of money in defendant's possession at the time of his arrest;

(d) A physician improperly testified that, in his opinion, an abortion had been performed;

(e) The State attempted to explain the absence of a crucial witness;

(f) The State improperly advised the jury of sepparate indictments pending against defendant.

2. Defendant was prejudiced by the improper admission into evidence, and submission to the jury during deliberation, of certain medical instruments.

3. The jury was erroneously instructed with respect to defendant's credibility as a witness.

Although defendant has not questioned the sufficiency of the evidence, we believe that a summary of the facts is necessary to understand defendant's contentions. A hearing was held on defendant's motion to suppress confessions and statements, which testimony will not be summarized, but pertinent parts of that testimony will be mentioned in the body of this opinion.

EVIDENCE

At the hearing on defendant's motion to suppress

The principal witness for the State at the pretrial hearing was Allen Engerman, an Assistant State's Attorney. Part of his testimony follows: He was present with police officers at the time of defendant's arrest. He said that they were to enter the building on a signal by radio carried in the purse of the complaining witness. This they did, and the witness then had a conversation with defendant in the latter's office. He asked defendant if they could search the premises, and defendant replied, "I don't care. My life is ruined. I feel so ashamed of what I've done. How will I ever explain this to my family? I deserve to be punished. Here are the keys. Go ahead, search wherever you want. I feel ashamed for what I have done."

At the trial

The principal trial witnesses were Phyllis Lundie Gruver (who allegedly was aborted by defendant) and Dr.

Raymond McDermott (who examined her) for the State, and defendant on his own behalf.

Testimony of Mrs. Gruver:

On August 10, 1963, she was ummarried and had occasion to visit defendant in his office for twenty minutes. She told him that she had been sent by Ralph Fowler. When defendant replied that he did not know Fowler, she said that he must be aware who he is and that Fowler told her to be present at noon on that day in defendant's office. After inquiring as to her last menstrual period, defendant conducted an examination, and told her to have Fowler call him the next morning. She next saw defendant on August 14. Fowler drove her to defendant's office at 8:00 a. m., and she entered alone. Defendant took her to a small examining room and gave her two injections to induce a sleepy condition. He asked if she had the money. She handed him a yellow envelope and said, "$450, is that right?" He shook his head and, after she said that this was her understanding, he put the envelope in his back pocket. She then testified to the details of the abortion performed by defendant, including her observing certain medical instruments, curettes and a speculum, being used in the operation. At the conclusion of the operation, she entered defendant's private office, where Fowler was talking to defendant. Defendant handed Fowler a prescription for a pill to be taken four times a day. She and Fowler left defendant's office and were headed home when stopped by a policeman. She was then taken to Illinois Masonic Hospital and examined by Dr. Raymond McDermott.

The witness is a registered nurse, having received two years and seven months' training at Passavant Memorial Hospital. She was employed at Passavant for one and a half years and then at the University of Chicago Clinic for ten months before returning to Passavant, where she is currently employed. Part of her training and experience had concerned the treatment of women who had been aborted.

Testimony of Dr. McDermott:

He is an obstetrician and gynecologist. He examined Mrs. Gruver on August 14, 1963, and found that a gauze packing had been inserted into her vaginal orifice, that

her uterus was enlarged, indicating a four-to-six-week pregnancy, and that the cervix contained a round puncture wound some three to six hours old. He indicated that the condition could be caused by only one thing—abortion—which was his diagnostic impression.

Testimony of defendant:

He was acquainted with Ralph Fowler and had seen him ten times professionally between January, 1962 and August, 1963. He saw Fowler and Mrs. Gruver on Sunday, August 11, 1963, at 3:00 p. m. Fowler had called him around noon on that day, stating that the matter was urgent. Fowler said that Mrs. Gruver was going to marry his wife's brother and she thought she was pregnant, but desired an examination to be certain. Defendant performed the examination and told her it appeared that she was pregnant, but the only way to be positive would be to take a "rabbit pregnancy test." As she was getting dressed, she asked him if he would perform an abortion. Defendant advised her that he was "not in this business." He tried to convince her to marry the father of the child, but she persisted in requesting an abortion and walked out of the examining room. He overheard her say to Fowler, "It looks like I was right, but he won't do it." Fowler then asked defendant if he could recommend anyone and defendant reiterated his objection to this request.

Defendant next saw Fowler and Mrs. Gruver on August 14, between 8:15 and 8:30 a. m., after Fowler had called him at 7:45 a. m. stating that it was urgent. They informed defendant that Mrs. Gruver had had an abortion the previous day and was suffering harmful side effects. Defendant told her to contact her own doctor, and she left, disgusted and disappointed.

Fourteen witnesses testified on defendant's behalf that his general reputation in the community was very good and that he was an honorable member of the medical profession and a law-abiding citizen.

OPINION

Defendant urges that he was deprived of a fair trial because the State, on several occasions, elicited or divulged evidence that substantially prejudiced defendant

in the eyes of the jury. His first contention in this respect concerns a remark made by the Assistant State's Attorney in his opening statement. He was describing the circumstances surrounding defendant's arrest when he stated:

> "The arrest was effected by State's Attorney's police. Assistant State's Attorney Engerman was present at the time the arrest was made. After the defendant was arrested and while in his office, he orally admitted to Assistant State's Attorney Engerman the fact that he did perform an abortion."

Defense counsel's objection was sustained after a lengthy discussion in chambers to determine the propriety of this statement, but defendant's motion for a mistrial was denied. Mention was made of the prior hearing on defendant's motion to suppress "the statement, admission, confession and declarations" made by him on or about August 14, 1963. The judge who had presided at that hearing (Charles Barrett) was not the presiding judge at the trial. At the conclusion of the pretrial hearing, the court referred to the fact that defendant had engaged in various conversations at and after the time of his arrest; that at about 3:00 p. m., in the office of the State's Attorney, he requested an opportunity to talk to his counsel; and that thereafter he made a confession which was reduced to writing. The court then announced that the written confession would be suppressed, but continued with the following ruling:

> But I find nothing in this Escobedo case (Escobedo v. Illinois, 378 US 478) that would prevent the testimony of individuals who happened to be on the scene and had conversations with the defendant. So the written confession will be suppressed. And the Court will rule, as the case is tried—and I assume it will be by this Court—on the matter of oral statements by the defendant in the course of the arrest and immediately following the arrest up to the hour of 3:00 p. m. in the afternoon.

Whereupon, defense counsel stated, "I take it that I take the words of the Court, that the Court feels—I in-

terpret him literally—if and when those questions, namely, as to the oral declarations of the accused, proceeding to take the testimony, and upon proper motion taken before the Court, the Court will give the motion the calm deliberate consideration so typical of the Court, I presume."

At trial, Judge Healy reviewed the evidence introduced at the pretrial hearing and stated that he interpreted Judge Barrett's ruling as having suppressed not only the written confession taken at the State's Attorney's office, but also all oral statements or admissions made prior thereto at the time of arrest. Following Dr. McDermott's testimony, the Assistant State's Attorney advised the court, out of the jury's presence, that he was going to call a witness to testify to oral declarations and admissions made by defendant immediately following his arrest. The judge stated that he was required to follow the prior order of Judge Barrett that the "confession was suppressed." Defense counsel then offered the comment that the State's witness about to be called was Allen Engerman and that his name was not included in the list of witnesses furnished by the State. The State advised the court that defense counsel had been informed several times over a period of a year and a half that Engerman would be called as a witness and that Engerman had, in fact, testified at the hearing on defendant's motion to suppress. The judge ruled that Engerman was not to be put on the stand as a witness at that time.

The jury was brought in and the Assistant State's Attorney called Engerman to testify. The judge immediately ruled again that Engerman was not to be called. The Assistant State's Attorney then stated, "Are you suppressing one that was there at the time of the arrest?" The remark was stricken upon defense counsel's objection. At this point, the prosecutor was granted a five-minute recess to go downstairs and get "another witness." Edward King, a police officer assigned to the State's Attorney's office, then took the stand. The prosecutor attempted to elicit evidence concerning the conversation that took place between Engerman and defendant at the time of the arrest. This line of questioning was

twice objected to, and the objections were sustained. The same topic was pursued during the questioning of Officer Dwyer, another State's Attorney's policeman present at the time of the arrest, and objection also was sustained. When defendant took the stand, the prosecutor, on several occasions, mentioned the police officers who were present during the arrest. Objections to this cross-examination were also sustained.

Defendant urges that the cumulative effect of these attempts by the State's Attorney to bring defendant's alleged confession to the jury's attention was to deprive defendant of a fair trial. At the trial, Judge Healy said he considered himself bound by Judge Barrett's pretrial ruling, his interpretation of which was that all testimony of Engerman concerning statements by defendant had been suppressed, but we note that the admissibility of oral statements of defendant at the time of arrest was not passed upon by Judge Barrett on the motion to suppress. This fact is made clear in that judge's ruling quoted above. The State's Attorney therefore, at the time of his opening statement, had no good reason to believe that testimony about defendant's oral statements would not be admissible. Thereafter, no witness or prosecutor mentioned that defendant had confessed, even though the questioning concerned the details of the arrest. Also, the court ordered the jury to disregard the direct reference, and instructed them that an attorney's comments were not to be considered as evidence. We do not believe that defendant has shown prejudice sufficient to warrant a new trial. See People v. Martin, 376 Ill 569, 571, 34 NE2d 845.

Likewise, even though the prosecutor's action in calling Engerman to the witness stand was in violation of the court's direction, we do not believe defendant was prejudiced. His comment, "Are you suppressing one that was there at the time of the arrest?" is not construed by us, as defendant urges, as a direct reference to an alleged oral confession. We believe that the statement related to suppression of the witness' testimony about the circumstances of the arrest and not necessarily to any confession. Further, the judge ordered that the remark be stricken and directed the jury to disregard it.

Defendant contends that a newspaper article, which appeared on the final day of trial and was read by six jurors, deprived defendant of a fair trial because it described the events which occurred when the prosecutor called Engerman to the stand, citing Sheppard v. Maxwell, 384 US 333, 362, and People v. Cain, 36 Ill2d 589, 224 NE2d 786. The article stated that "Judge Healy had upheld a defense motion . . . that [Engerman] . . . was a surprise witness and should not be permitted to testify." The article further described the court's refusal to permit the filing of an affidavit of Judge Barrett saying that he had suppressed a written confession, but that he had not suppressed testimony concerning conversations, declarations or statements of defendant at the time of his arrest. The suppression of defendant's alleged written confession was mentioned in the newspaper. When this article was brought to the court's attention, the judge inquired of the jury how many had read it. He then asked the six jurors if they were prejudiced "one way or the other against the defendant," and they answered, "No." Defense counsel made a motion that the jury be advised that the facts recounted in the article were inaccurate. The judge then explained to the jury that he would not allow Engerman to testify since his name had not appeared on a list of witnesses, but that at no time in ruling on the motion had he used the word "surprise" or indicated that Engerman was a surprise witness. Defense counsel did not move for a mistrial on this point, nor was any contention made at the trial that the article prejudiced defendant.

We find that defendant was not prejudiced by the contents of this article. The poll of the jurors indicated that there was no prejudice, and the court pointedly advised them of the article's inaccuracies. No demonstrable prejudice is shown—only speculation. See United States ex rel. Darcy v. Handy, 351 US 454, 462. Moreover, because defense counsel failed to object to the procedure followed by the court, or to ask for a mistrial, an inference may be drawn that the incident was unimportant when viewed in the light of the entire trial. Defendant may not now seek to take advantage of any ir-

regularity under these circumstances. See People v. Mays, 23 Ill2d 520, 526–6, 179 NE2d 654.

 Defendant maintains that it was prejudicial for the State to introduce evidence that $16,000 in cash was found by the police in defendant's office at the time of his arrest. Defendant concedes that it was proper to offer testimony pertaining to the $450 allegedly paid by Mrs. Gruver, but that evidence of a larger sum exceeds permissible reference. The testimony complained of was given during the direct examination of Officer King, who stated that "some fifteen thousand dollars or a little more" was recovered. Defense counsel's objection was sustained and the jury was instructed to disregard the statement. It was then adduced that he saw seven hundred dollars on top of a desk and more than five hundred dollars in a desk drawer. It is obvious from the record that the State was attempting to demonstrate that Mrs. Gruver's abortion payment was in defendant's possession. Defendant argues that the amounts referred to were prejudicial as leading the jury to believe that defendant had committed other crimes or was guilty of income tax evasion. We find no merit in this contention.

Defendant argues that the State improperly elicited prejudicial testimony from Dr. McDermott concerning his diagnosis of Mrs. Gruver's condition. The prosecutor asked the witness, on direct examination, if he had arrived at a diagnosis after his examination of Mrs. Gruver. Defense counsel requested and received leave to interrupt the State's Attorney's interrogation for the purpose of questioning the doctor about his qualifications to give an opinion on that point. This examination, in the presence of the jury, covered, among other things, the written report which the witness had made. Part of the report read: "Impression: abortion. To observe." The witness testified that this represented a "diagnostic impression . . . obtained from a multitude of findings," and that the "combination of symptoms comes up with a single diagnosis."

When the prosecutor was then permitted to continue his direct examination, the witness was again asked for his diagnosis, and defense counsel immediately requested

a hearing outside the jury's presence. This was granted and resulted in the judge's decision to allow the doctor to testify to "what he found from his examination," the prosecutor having stated that he would have the witness testify that Mrs. Gruver suffered a miscarriage. Dr. McDermott then testified that "my diagnosis was that she had been pregnant and that she had undergone the process known as abortion." Defense objection was sustained and the jury was instructed to disregard this testimony. The prosecutor then attempted to have the doctor distinguish between "legal" and "medical" abortion. Objections to this line of questioning were also sustained.

██ ██ We do not believe that defendant was prejudiced by the introduction of this stricken testimony. The witness did not state that the abortion was unlawful or criminal (see People v. Gleitsmann, 361 Ill 165, 197 NE 557), and there is an important distinction between the medical and legal meanings of that word which the prosecutor attempted to show. The witness did not invade the province of the jury. Moreover, during defense counsel's prior examination of the witness, the term "abortion" was used and was referred to as "passing of the fetus." This introduction of evidence on the same subject precluded defendant's instant objection, as he is deemed to have invited the response. See Cleary, Handbook of Illinois Evidence, § 7.3.

██ ██ Defendant further asserts that the State improperly attempted to explain the absence of a "crucial" witness, Ralph Fowler. An Officer Dean had testified that he had an appointment to meet with Fowler, but that Fowler had not shown up. Defense counsel, in closing argument, stated that it is "common sense" to presume that if the State had produced this witness, he would have testified adversely to its case. The State's Attorney, in his closing argument, countered by suggesting that Fowler had "disappeared" in order to bolster defendant's case. We find nothing improper in the officer's testimony concerning Fowler's failure to keep his appointment. This testimony had no substantive effect and created no presumption prejudicial or favorable to

either party. And, since defense counsel invited the prosecutor's argument by his own prior argument on the same subject, he is not in a position to complain. People v. Woodley, 57 Ill App2d 380, 388, 206 NE2d 743.

 We also believe that defense counsel invited comment by the prosecutor when, in closing argument, he stated that the weakness of the State's case was reflected by its listing of 26 witnesses when only a few were called. He suggested that this showed a desire to "tucker out" the defense. The State's Attorney objected to the statement and told the court that defense counsel had been informed that the list specifically referred to "several other indictments." In this, the prosecutor was merely attempting to prevent the jury from being misled. The response was within the bounds of fair comment and does not constitute prejudicial error. See People v. Smith, 24 Ill2d 198, 200, 181 NE2d 77.

 Defendant next contends that he was prejudiced by the improper admission of certain medical instruments into evidence and their submission to the jury during its deliberation. The instruments, a speculum and curettes, were admitted without objection by defense counsel. Defendant now urges that no foundation was established for their admission since they were not connected with the crime (People v. Germany, 28 Ill2d 154, 190 NE2d 713), and are common instruments of the medical profession found in almost every doctor's office. Mrs. Gruver testified that she saw a curette on a towel in defendant's operating room and, while the abortion was being performed, felt and heard a scraping in her abdomen. We believe that the case of People v. Johndrow, 71 Ill App2d 75, 218 NE2d 25, is dispositive of this issue. There, the court stated at page 78:

> In our opinion these instruments were admissible in evidence to show that the defendant could have used one or a combination of them to commit the abortion. Wharton, Criminal Evidence, 12th Edition, Volume I, page 298.

Our adherence to this statement is not affected by the fact that Mrs. Gruver did not testify that she had actual-

ly seen the speculum. It is sufficient that the instruments were recovered in defendant's office and that defendant "could have used one or a combination of them to commit the abortion." Johndrow, supra.

■■ We also believe that the trial judge properly exercised his discretion in permitting the jurors to take the instruments with them to the jury room during their deliberations. The issue as to whether exhibits in evidence should be taken to the jury room is a matter within the sound discretion of the trial judge and his ruling will not be disturbed unless there has been an abuse of that discretion to the prejudice of defendant. People v. Allen, 17 Ill2d 55, 62, 160 NE2d 818. The instruments were properly in evidence, they were recovered from defendant's office at the time of his arrest, and they were linked to the abortion act. We believe that no prejudicial abuse of discretion has been demonstrated.

Defendant's final contention is that the court erred in giving to the jury an instruction tendered by the State on the subject of a jury's proper consideration of a criminal defendant's own testimony. Since defendant has abstracted only this one instruction, the point need not be considered. People v. Robinson, 27 Ill2d 289, 292, 189 NE2d 243. The State has invited our attention, however, to the fact that the exact instruction to which defendant now objects was also tendered by defendant and may be said to have been given on his behalf also, thus vitiating whatever validity the point may have had. See People v. Riley, 31 Ill2d 490, 496, 202 NE2d 531.

■■ In his reply brief (for the first time), defendant seeks to have this court consider the constitutionality of the abortion statute under which he has been convicted, contending that the language of the statute is so vague and uncertain as to be violative of the due process clauses of the United States and Illinois Constitutions. This issue was not raised in the trial court and is therefore not proper for our consideration. As stated in People v. Luckey, 42 Ill2d 115, 117, 245 NE2d

769, "The question of the constitutionality of a statute is properly preserved for review only when it has been raised in and passed upon by the trial court."

The judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and LEIGHTON, JJ., concur.