THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDDIE JAMES VIRGIN, a/k/a EDDIE VIRGLE, Defendant-Appellant.

(No. 57348;

First District—January 12, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Fred Shandling and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, Peter J. Wonais, and Mark T. Zubor, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DRUCKER delivered the opinion of the court:

In a jury trial defendant was convicted of the offense of rape and sentenced to a term of five to 15 years.

On appeal defendant contends that (1) the trial judge "impermissibly invaded the province of the jury" by refusing its request, during its deliberations, for certain testimony and exhibits; (2) he was denied his right to be present at every stage of the proceedings; (3) it was error to allow the testimony of an officer as to the contents of a lab report which he did not prepare; (4) defendant was denied a fair trial because of repeated instances of hearsay testimony; and (5) the identification testimony should have been suppressed as the product of impermissibly suggestive procedures.

The testimony of the State's witnesses at trial was as follows: On February 1, 1967, at about 5:30 A.M., the complaining witness, Mrs. Connie Smith, was walking on Fifth Avenue near Pulaski Avenue in Chicago on her way to work. As she was walking a man came up behind her, threatened her with a knife, threw a coat over her head, dragged her to the rear of an apartment building and raped her. The rape occurred at approximately 5:30 or 5:45 A.M. During the assault the coat came off of her head on three occasions. She was able to see the attacker twice when the coat came off, for a total of about two minutes. At the time of the assault it was still dark outside, the sun was just beginning to rise

and the street lights were on. In the back of the apartment building, where the rape took place, a light on the apartment building illuminated the scene. She described her assailant as about 25 years old, 140 to 150 pounds and wearing a green bulky knit sweater.

After the assault, the complaining witness returned to her home and told her husband what had happened. Her son called the police. The police took her to the hospital. She returned home a short time later.

At about 5:30 or 5:40 A.M., the officers who eventually arrested defendant for the rape, were flagged down by a motorist who told them that he had seen a man struggling with a woman for her purse, Pulaski and Fifth Avenue. (Fifth Avenue is 600 south at Pulaski.) As the officers headed for that location they found defendant walking on the 1000 block of South Pulaski. He told the officers that he was coming from Pulaski and Fifth Avenue and had been in a restaurant for the last three hours. The defendant accompanied the officers to the restaurant to check his story. The proprietor of the restaurant told the officers that defendant had in fact been in the restaurant for three hours but had left about 5:00 A.M., 45 minutes earlier than defendant had claimed. Defendant said he had "just been walking" in the interim. No purse snatching victim had yet registered a complaint, so the officers released defendant after taking his name and address.

Later, at about 6:45 A.M., the police dispatch reported a rape which took place in the same area and at about the same time as the citizen reported seeing a man struggling with a woman. The broadcast gave a description of the assailant. The officers decided that defendant "fit" the description. They drove to his home and then to his place of employment but were unable to find him. They went back to his home and this time were successful. One of the officers testified that the arrest occurred at approximately 7:00 A.M. Defendant was dressed in the same clothes as when he was first stopped. He was wearing a bulky knit green sweater.

The defendant was brought to the district police station. Later in the morning the police told the complaining witness that they had "picked up a man that fit the description" she had given. Some time "before noon" the two arresting officers brought defendant to her home. One officer went to her front door. The other officer remained standing by the squad car, along with the defendant. When Mrs. Smith saw defendant, she said, "That's the man."

Defendant did not offer any evidence in his behalf.

After the jury had retired, a bailiff and a deputy sheriff heard the jury buzz. Since they had told the jury to buzz four times when it had reached a verdict, the deputy sheriff and bailiff decided to do nothing. Then they heard someone knock on the door. They asked if someone had knocked,

and a member of the jury replied: "Yes, we want to ask a question." The deputy sheriff replied: "Just a minute" and immediately notified the trial judge. The attorneys were called and the above sequence was related to them on the record. The court, defense counsel and the State's Attorney discussed possible courses of action. Over the objection of defense counsel it was decided to submit a blank pad of paper and a pen to the jury. Defense counsel objected to any response to the jury's inquiry, arguing that if a question were in fact submitted by the jury, a subsequent refusal to answer the question (*i.e.*, silence) might be taken by the jury as a substantive answer in and of itself.

The pad and pen were submitted to the jury, and the person who gave them the pad and pen instructed the jury simply to write the question on the pad and then hand it back.

The pad was returned with two questions written on it and signed by a member of the jury. The first question was: "Can we have the two defense exhibits entered as evidence in the jury room or read aloud to us?" The second question was: "If a question arises about oral evidence may we have it read to us?"

The pad was returned with the following answer written directly beneath the questions: "The jury has everything it is allowed to have. Judge Robert J. Downing." In discussing the wording of the reply, defense counsel had stated with respect to this reply: "That's fine."

*Opinion*

■■ Defendant first contends that it was error to refuse the jury's request for certain exhibits and testimony. However, at trial defense counsel fully concurred in the court's response to the jury's request. Furthermore, the motion for a new trial did not raise this issue. To the contrary, the motion for a new trial, insofar as it relates to contact with the jury, states only: "The Court erred in allowing improper communication with the jury during their deliberation." Since this issue has not been properly preserved, it is deemed waived. (*People v. Irwin*, 32 Ill.2d 441, 443.) However, we note that the two defense exhibits although marked for identification were never admitted in evidence. Moreover, the disposition of the jury's request was a matter for the sound discretion of the trial judge. (*People v. Pierce* (1973), 9 Ill.App.3d 153, 291 N.E.2d 58; *People v. Mirmelli*, 130 Ill.App.2d 1, 264 N.E.2d 470.) An examination of the record and defendant's brief reveals no abuse of that discretion.

■■ Defendant next contends that he was denied his constitutional right to be present at every stage of the proceedings against him and he was not present when the above incident occurred. We believe that this argument is without merit. The defendant was represented by counsel when the trial court was deliberating in what action to take and participated

in formulating a response to the jury's request. (See *People v. Pierce, supra.*) The jury was not in the courtroom during this stage of the proceedings.

■■ Defendant next contends that it was error to allow Officer Finnelly, one of the arresting officers, to testify to the presence of sperm on the complaining witness' underclothing since he had not prepared the laboratory report which disclosed this information. No proper foundation was established for this testimony but we believe that its admission was harmless beyond a reasonable doubt. The facts of the rape and defendant's identification were established by other competent evidence. *People v. Pelkola,* 19 Ill.2d 156, 166 N.E.2d 54.

■■ Defendant's next contention is that he was denied a fair trial because of numerous instances of what defendant characterizes as hearsay testimony. The written post-trial motion of defendant does not set out the particular hearsay statements now claimed to be prejudicial and therefore these contentions are deemed waived. *People v. Irwin,* 32 Ill.2d 441, 443, 207 N.E.2d 76.

■■ Finally, defendant attacks the identification testimony of the complaining witness at trial as the product of "unnecessarily suggestive procedures," referring to the show-up in front of the complaining witness' home. We need not consider whether the procedures were suggestive and unnecessary since at the time of the rape there was an adequate independent basis for Mrs. Smith's in-court identification which was corroborated by the circumstances surrounding defendant's arrest. *People v. Cook,* 113 Ill.App.2d 231, 252 N.E.2d 29.

The judgment is affirmed.

Affirmed.

ENGLISH and LORENZ, JJ., concur.