THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v*. ISON L. GRAVES, Defendant-Appellant.

(No. 59961;

First District (5th Division)—October 11, 1974.

James J. Doherty, Public Defender, of Chicago (Robert P. Isaacson, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Michael J. Polelle, and Bruce H. Weitzman, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was convicted of the charge of unlawful use of a weapon in the City of Chicago in violation of section 24—1(a)(10) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(a)(10)) and was given a 1-year sentence.

On appeal, defendant does not dispute the commission of the act charged but challenges only the validity of the statute under which he was convicted. Specifically, he contends the statute is unconstitutional in that (1) it violates article IV, section 13, of the Illinois Constitution because it applies only to incorporated cities, villages and towns; and (2) having this limited application, it also violates the equal protection clause of the United States Constitution.

The State objects to the introduction at the appellate stage of these contentions. It argues that the constitutional avenue of attack has been waived by failure to preserve the point by timely objection in the trial court.

OPINION

## I.

In support of its position that constitutional questions are improperly raised when first presented in the appellate court, the State invites our attention to two cases which it contends are controlling, *People v. Reese,* 14 Ill.App.3d 1049, 303 N.E.2d 814, and *People v. Amerman,* 50 Ill.2d 196, 279 N.E.2d 353. In *Reese,* this court stated at page 1055:

> "Concerning the question of the constitutionality of the applicable statute, we have examined the entire record and find this issue was not raised in the trial court and is being raised here for the first time. Since this is the first point at which the constitutionality issue has been raised, we will not consider the question here."

However, it is to be noted that this language is *obiter dicta* since the court proceeded to reverse the trial court's decision on other grounds.

In *Amerman,* defendant was convicted of possessing a pistol without registering it as required by the provisions of the Firearm Owner's Identification Act. Then, for the first time on appeal, he contended the Act was unconstitutional in that it deprived him of due process and equal protection rights. In dismissing his appeal, the court stated at page 197:

> "We cannot entertain this appeal. The rule is familiar that a nonjurisdictional question which has not been properly presented in the trial court and preserved for review will not be considered on appeal. [Citation.] This rule is, of course, applicable to constitutional questions. 'It is fundamental that the question of the constitutionality of a statute cannot be properly raised for the first time in a court of review, but must have been presented to the trial court and ruled upon by it, and the person challenging its validity must have preserved proper exceptions to such ruling.' [Citations.]'"

In his dissent in *Amerman,* Mr. Justice Goldenhersh examines the history of legal gyrations which produced the result determined by the majority. He then proceeds to state at page 200:

> "The Code of Criminal Procedure of 1963 (Ill. Rev. Stat., ch. 38, par. 100—1 *et seq.*) enumerates the grounds upon which a pretrial motion to dismiss an indictment may be made (par. 114—1) and provides that all are waived by failure to file a motion except * * * 114—1(a)(8) which provide respectively:
>
> * * *
>
> '(8) The charge does not state an offense.'
>
> The Committee Comments (S.H.A. ch. 38, sec. 114—1, p. 123) state: 'Subsection (a)(8) permits the motion to dismiss where the charge does not state an offense. In accordance with Article III,

'charge' refers to the complaint, indictment or information. Since a charge which does not state an offense does not give defendant a full notice of why he is being tried, and the charge will not sup-: port a judgment unless an offense is stated therein, due process would be violated and may be attacked at any time.'

   &#42;  &#42;  &#42;

 Adverting to subsection (a)(8), and the Rule, it is difficult to perceive how a complaint, indictment or information can state an offense based upon an invalid statute, and it is equally difficult. to perceive a right more 'substantial' than the right not to be con-' victed of an offense charged under an unconstitutional statute."'

This same issue also arose in *People v. Mirmelli*, 130 Ill.App.2d 1, 264 N.E.2d 470, where this court stated at page 15:

 "In his reply brief (for the first time), defendant seeks to have this court consider the constitutionality of the abortion statute under which he has been convicted, contending that the language of the statute is so vague and uncertain as to be violative of the due process clauses of the United States and Illinois Constitutions. *This issue was not raised in the trial court and is therefore not proper for our consideration.* As stated in *People v. Luckey*, 42 Ill.2d 115, 117, 245 N.E.2d 769, 'The question of the constitutionality of a statute is properly preserved for review only when it has been raised in and passed upon by the trial court.'" (Emphasis added.)

Parenthetically, it should be noted that *Luckey*, cited above in *Mirmelli*, was one of the cases relied upon by the majority of the supreme court in *Amerman*.

■■  On appeal, *Mirmelli* was consolidated with and docketed under the title *People v. Frey*, 54 Ill.2d 28, 294 N.E.2d 257. There the Illinois Supreme Court reversed Mirmelli holding the abortion statute unconstitutional. The court stated at page 32:

 "The conviction of Dr. Mirmelli must therefore be reversed. The statute creating the offense is invalid and a judgment entered thereon is erroneous and void."

Thus, although not specifically stated, it would appear that *Luckey* and its descendant, *Amerman*, have been impliedly overruled, and that the reasoning in the dissent of Mr. Justice Goldenhersh in *Amerman* would now seem to prevail. It is to be noted, however, that this rule applies only where the constitutionality of the statute under which a defendant is convicted is being attacked. Conversely, where issues collateral to the validity of the statute are involved, failure to object at trial waives those issues even though they arise out of constitutional violations. Into

this category falls *People v. Eubank,* 46 Ill.2d 383, 263 N.E.2d 869, *cert. denied,* 402 U.S. 972, cited by the State. There, defendant was convicted of armed robbery but sought on appeal for the first time to challenge the Alibi Statute, an issue collateral to the charge of armed robbery. It was thus properly held there that the point was waived by failure to raise it in the trial court.

■■■ Since defendant here challenges the constitutional validity of the statute under which he was convicted and sentenced, his objection is not waived by failure to  present it at the trial court. Were the statute unconstitutional, it would be, as stated by the supreme court in *Frey,* "erroneous and void," and, in this event, defendant would have been convicted of a charge which failed to state an offense. Supreme Court Rule 615 provides in part:

> "Plain errors are defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."

The right not to be convicted of an offense charged under an "erroneous and void" statute is such a "substantial right." See *Amerman, supra,* at page 201.

## II.

Having held the challenge to the validity of the statute was not waived, we turn now to the question of its constitutionality. The challenged statute states as follows:

> "§ 24—1. Unlawful Use of Weapons.
>
> (a) A person commits the offense of unlawful use of weapons when he knowingly:
>
>         *    *    *
>
> (10) Carries or possesses in a vehicle or on or about his person within the corporate limits of a city, village or incorporated town, except when on his land or in his own abode or fixed place of business, any loaded pistol, revolver or other firearm."

Regarding this statute, defendant first argues that it violates article IV, section 13,[1] of the Illinois Constitution because it fails to provide protection for the unincorporated areas and thus constitutes "special" legislation favoring incorporated areas.

In *Bridgewater v. Hotz,* 51 Ill.2d 103, 281 N.E.2d 317, the supreme court stated at pages 111-112 with regard to section 13 of article IV of the 1970 Constitution:

---

[1] "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination."

"If there is a reasonable basis for the classification, and it bears a reasonable and proper relation to the purposes of the act and the evil it seeks to remedy, it does not violate the constitutional proscription of special or local laws. [Citations.] As the court said in *People ex rel. Du Page County v. Smith* [21 Ill.2d 572] at page 577: '* * * [I]t is well settled that an act is not local or special merely because of a leg:slative classification based upon population [citation], or territorial d:fferences [citation]. *Such classifications will be sustained where founded upon a rational difference of situation or condition existing in the objects upon which it rests, and where there is a reasonable basis for the classification in view of the objects and purposes to be accomplished.* [Citations.]' " (Emphasis added.)

Thus, if the purpose is legitimate and the distinction rational, the statute will be upheld.

It seems obvious that the object and purpose of the statute in question here was to limit the availability of firearms in the more populated areas of the state. Pursuant to its police powers, the State has a valid interest in controlling crime within its borders, and we think that the limitations on the right to carry or possess guns fulfills a valid State purpose in controlling the incidence of their use in the commission of crimes.

Likewise, the distinction in the statute between incorporated and unincorporated areas appears to be a rational one. On the whole, incorporated areas, be they cities, villages or towns, are much more densely populated than unincorporated areas. Furthermore, there seems to be a rational distinction between the crime rates in the more largely populated areas than in less populous areas. This distinction is generally expressed either in terms of distance from urban areas or in the difference in the crime rates of urban and rural areas.

These contrasts may be seen from the President's Commission on Law Enforcement and Administration of Justice, *Task Force Report: Crime and Its Impact—An Assessment* (1967), where it is stated at page 140:

"Over time, one of the most consistent regularities found in crime statistics is the higher overall rate of crime in urban as compared with rural areas."

In its synthesis at page 151, the report states:

"The most frequent finding is that crime rates in general, and property offense rates in particular decrease as distance from the center of urban areas increases. This is particularly the case when the center of the urban area is characterized by physical deterioration, high rates of economic dependency and poverty, transiency,

minimal community organization, and a high degree of anomie, and high concentrations of depressed minority groups."

■■ In view thereof, we feel that the legislature's expression here of the difference in terms of "incorporated" as opposd to "unincorporated" areas was not arbitrary. Whether expressed as "rural-urban" or in terms of distance from urban areas or in terms of incorporated areas as opposed to unincorporated areas, a distinction in crime rates does exist. The expression of this distinction is a matter for the legislature, and its classifications need not be logical, harmonious, scientific or even accurate provided they will accomplish the legislative design and are not arbitrary. (*People ex rel. City of Salem v. McMackin*, 53 Ill.2d 347, 364, 291 N.E.2d 807; *People ex rel. Vermilion County Conservation District v. Lenover*, 43 Ill.2d 209, 251 N.E.2d 175.) Here, we believe that there is a "rational difference of situation" and a "reasonable basis for the classification in view of the objects and purposes to be accomplished," as required by *Bridgewater, supra*. We reject defendant's contention that the statute was in violation of article IV, section 13, of the Illinois Constitution.

### III.

■■ Defendant also challenges the statute under the equal protection clause of the United States Constitution. In this regard, it appears that the traditional standard of review under the equal protection clause requires only that the State's classification have some rational relationship to legitimate State purposes unless (1) there is involved some "suspect classification," *e.g.*, race, national origin, alienage, indigency, or illegitimacy (*San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 61); or (2) the statute impinges upon a fundamental constitutional right, *e.g.*, freedom of the press, free speech, right to travel, etc. (*Rodriguez, supra*, at 61.) We note that neither exception is involved here.

In determining whether there is a rational relation to legitimate State purposes, the rule appears well established that a statute will not be construed as denying equal protection of the law unless the classifications complained of are arbitrary and not based upon a rational difference of condition or situation in relation to the legislative purpose. *People ex rel. City of Salem v. McMackin*, 53 Ill.2d 347, 363, 291 N.E.2d 807; *Stein v. Howlett*, 52 Ill.2d 570, 289 N.E.2d 409.

■■ Thus, it may be seen that the standards under the equal protection clause and those under article IV, section 13 of the Illinois Constitution are similar. Indeed, absent the former's special scrutiny where suspect classifications or infringements of fundamental constitutional rights are involved, they are practically identical. (Compare *Bridgewater, supra*,

with *Rodriguez, supra,* and *McMackin, supra.*) As stated by Mr. Justice Stewart, in his concurring opinion in *Rodriguez,* at page 60:

> "[T]he basic concern of the Equal Protection Clause is with state legislation whose purpose or effect is to create discrete and objectively identifiable classes."

Consequently, we are of the opinion that if a State statute does not violate the special legislation prohibition and the exceptions found in *Rodriguez* are not present, *i.e.,* neither a suspect class is involved nor a fundamental right infringed, the statute will not, *ipso facto,* violate the equal protection clause.

In the instant case, we have found the statute does not violate the special legislation prohibition, and because the *Rodriguez* exceptions are absent, we hold that the statute also satisfies the equal protection requirements.

The statute being valid, the conviction thereunder must be affirmed.

Affirmed.

BARRETT and LORENZ, JJ., concur.