HARWOOD *v.* STATE *ex rel.* PILLARS.

(*Nashville,* December Term, 1946.)

Opinion filed May 3, 1947.

NAT TIPTON and C. WEBER TULEY, Assistant Attorneys General, for plaintiff in error.

JOHN W. HILLDROP, of Nashville, for defendant in error.

MR. JUSTICE NEIL delivered the opinion of the Court.

The defendant in error petitioned the Circuit Court of Davidson County for the writ of habeas corpus, complaining that she was being unlawfully restrained of her liberty by John M. Harwood, Warden of the State Penitentiary. The substance of the petition is that the said Ruby Earline Pillars was brought before the Juvenile Court at Nashville upon a felony charge; that she was adjudged guilty and sentenced to a reformatory for girls; that later she was ordered confined in the state penitentiary at Nashville by order of W. O. Baird, Commissioner of Institutions, on the ground that she was incorrigible. When the case was heard by the Circuit Judge on the technical record, the petition was amended as follows:

"Your relator shows to the Court that Section 4707 of the Tennessee Code and Chapter I of the Acts of 1921, General Assembly of Tennessee, is unconstitutional, null and void, in that it violated Section 8, Article I, of the Constitution of Tennessee, wherein it is provided:

" 'That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face; to have compulsory process for the obtaining of witnesses in his favor; and in prosecutions by indictment or

information, a speedy public trial by an impartial jury of the County in which the crime shall have been committed, and shall not be compelled to give evidence against himself.

" 'That no person shall be put to answer any criminal charge but by presentment, indictment or impeachment.' "

The foregoing amendment is not supposed to be a copy of any constitutional provision, but is a mere statement by the counsel as an amendment to his petition.

Section 4707 of the Code, the validity of which is attacked in this proceeding, provides (we refer only to the pertinent part of the section): ". . . Any girl over fifteen years of age, who was regularly convicted of a felony, who is incorrigible to such an extent that she cannot be controlled in the institution and is a menace to the peace and order of the institution, may be transferred to the state penitentiary by the said commissioner after a full investigation. When so transferred, she shall be entitled to benefit of the parole law."

Code section 4700 provides:. "Judges of the criminal courts, county courts, juvenile courts, and city courts, are empowered, in their discretion, either when presiding in term or at chambers, to hear all complaints lodged against colored girls under the age of eighteen years, and to determine the same without a jury; provided that in all cases such accused, either in person or by counsel, *shall have the right to a jury trial, which in no case shall be denied, if demanded.*" (Italics ours.)

The foregoing Code sections are a part of the Public Acts of 1921 which established an institution known as "Tennessee Vocational School for Colored Girls", the same being under the control and supervision of the Commissioner of Institutions.

When the relator Ruby Pillars was committed to this institution for colored girls, she was between 15 and 16 years of age. She was represented by a reputable attorney of the Nashville bar. The mother was also in court at the time of the hearing. A certified copy of the record of the Juvenile Court shows that the relator admitted her guilt of having procured numerous valuable articles of merchandise from several department stores in Nashville by falsely representing herself to be the maid of a Mrs. Kennedy. Before obtaining the articles desired, she would call over the telephone, representing herself as Mrs. Kennedy and stating that her maid was coming in to buy certain articles. There was no question as to her guilt of the offenses charged against her. Neither the relator nor her counsel questioned the regularity of the proceeding, and there was no request for a jury trial.

Able counsel for relator has argued that Code section 4707 should be held unconstitutional on the ground that infants should not be committed to the state penitentiary by mere administrative agency and that any such order of committal is void. The trial judge sustained this contention, holding Section 4707 of the Code to be unconstitutional. From this judgment, an appeal was prayed and granted.

We are thus presented with the single question as to the constitutionality of the above section of the Code. We have no Tennessee decision dealing with this question. It is a matter of first impression. The validity of the Juvenile Court statute, Code 1932, sec. 10269 *et seq.*, has been sustained by this Court against the charge that it authorizes a prosecution without indictment or presentment. *Childress* v. *State,* 133 Tenn. 121, 179 S. W. 643. But thus far we have not dealt with the validity of sta-

tutes authorizing the transfer of infants from state reformatories to other penal institutions.

The principle argument made against the validity of Section 4707 is that the power granted by the statute to transfer incorrigibles to the penitentiary for the remainder of their sentence has the effect of imprisonment in the penitentiary without a trial by jury and without an indictment. Our statute creating Juvenile Courts provides, ". . . that in all trials under this title, any person interested may demand a jury or the judge of his own motion may order a jury to try cases." Code section 10275. The act creating the Vocational School for Colored Girls provides that the right to a jury trial shall *"in no case be denied, if demanded."* Code, sec. 4700. (Italics ours.)

According to the undisputed facts of the instant case, the relator pleaded guilty to a charge of a felony; in fact, there was an admission of guilt to numerous charges of this character. As heretofore stated, she was represented by counsel; there was no demand for a jury by relator, her counsel, or by any "interested person". Moreover, it is not denied that both the Superintendent of the Vocational School and the State Commissioner of Institutions concurred in finding that relator was incorrigible and "that it will not be for the best interest of the said Ruby Earline Pillars or the other inmates of the said institution for said girl to remain longer in the Tennessee Vocational School for Colored Girls." It was upon this concurrent finding that she was ordered transferred to the penitentiary to serve the remainder of her sentence.

The State's Attorney General has pointed out in an able discussion of the validity of our statute, that it was in effect when relator pleaded guilty, and that possibility of a transfer under the statute "formed a part of the punishment which was lawfully inflicted." We think the

great weight of authority supports this contention. Before passing to the consideration of the authorities, it must be conceded that a jury trial would have availed the relator nothing since she was committed under an admission of guilt. Due to her age, she was committed to the vocational school. Under the law, it was the duty of the superintendent of this school and the Commissioner of Institutions to consider the best interest of other inmates of the school when it developed that she was incorrigible. She had to be transferred to another institution. Manifestly, it was within the power of the Legislature to provide for the segregation of refractory inmates, and Code section 4707 provides that this be done.

Responding now to the relator's contention that the statute is void because it authorizies an administrative board to perform a judicial function and commit a person to prison without a jury trial, the leading case in this country is that of *In re Cassidy*, 13 R. I. 143. The Supreme Court of Rhode Island, in responding to this contention said, ''The second ground is that the statute authorizing the removal is unconstitutional because it confers judicial power on the Board of State Charities and Corrections and enables them even to alter the sentence of the court. We think this ground is also untenable. The statute was enacted before the sentence was pronounced, and the sentence must therefore be held to have been pronounced subject to its provisions. And the power given to the board is in our opinion simply disciplinary, and not in the constitutional sense of the word judicial. The petition is therefore denied.''

In a Massachusetts case, *In re Sheehan*, 254 Mass. 342, 150 N. E. 231, 233, opinion by Rugg, C. J., it was held that ''the transfer of [a boy] from the industrial school to the reformatory was not an infringement of the powers of

the judiciary" and that the order of transfer was not in violation of any constitutional right. "It was administrative in its essence. It was not an interference with, but a part of, the sentence imposed by the court." See also *Glazier* v. *Reed, Warden,* 116 Conn. 136, 163 A. 766, wherein it was held: "There is no doubt as to the validity of the statute permitting the directors of the reformatory to transfer an inmate who persistently refuses to obey the regulations or who appears to them incorrigible, to the state prison. The possibility of such transfer is an incident annexed to the sentence to the reformatory, and the determination of the existence of the circumstances conditioning the authority of the directors to make such a transfer may properly be left to them." Other cases to the same effect are *In re Murphy,* 62 Kan. 422, 63 P. 428; *State ex rel. Kelley* v. *Wolfer,* 119 Minn. 368, 138 N. W. 315, 42 L. R. A., (N S.) 978 Ann. Cas. 1914A, 1248; *In re Linden,* 112 Wis. 523, 88 N. W. 645; *Uram* v. *Roach,* 47 Wyo. 335, 37 P. (2d) 793, 95 A. L. R. 1448; *Stagway* v. *Riker,* 84 N. J. L 201, 86 A. 440. The only case holding to the contrary that has been called to our attention is *People ex rel. Martin* v. *Mallary,* 195 Ill. 582, 63 N. E. 508, 88 Am. St. Rep. 212.

▮▮▮ It was clearly foreseen by the Legislature when the Juvenile Court and other reformatory statutes were enacted that provision should be made for screening incorrigibles from other inmates who were being given an opportunity to be trained in good citizenship With this in view, it was provided in Code section 4707 that the unruly, the incorrigible, whose baneful influence was detrimental of the best interest of the institution, should be placed elsewhere. It was a matter of wise administration of an institution erected for the betterment of wayward young people, and not an added punishment for crime.

The constitutional provision which protects the citizen against imprisonment without an indictment and trial by jury is not applicable to the administrative control of penal or other corrective institutions. The removal of the relator by the State Commissioner of Institutions was not a judicial act, but was purely an administrative measure that was authorized by the Legislature. We think it was clearly within the police power of the State to make provision for the transfer of unruly inmates from one institution to another where such transfer is not arbitrary or capricious but in the enforcement of reasonable discipline.

The assignment of error is sustained, the judgment of the trial court is reversed, and the petition dismissed.

All Justices concur.