(Nos. 34634-35-36 Cons.—

THE PEOPLE *ex rel.* David Cornell Latimer *et al.,* Petitioners, *vs.* Ross V. RANDOLPH *et al.,* Respondents.

*Opinion filed May 21, 1958.*

Conn & Clendenin, of Sparta, (David N. Conn, of counsel,) for petitioners.

Latham Castle, Attorney General, of Springfield, (Fred G. Leach, and William H. South, of counsel,) for respondents.

Mr. Justice House delivered the opinion of the court:

People *ex rel.* Charles Phillips v. Ross V. Randolph No. 34635, and People *ex rel.* Carl West v. Ross V. Randolph, No. 34636, were consolidated with this cause on motion. Since the factual situations in the consolidated causes are the same, except as to the date judgment was entered and the period of confinement, our remarks are likewise applicable to those cases.

David Cornell Latimer was, on November 20, 1956, sentenced by the municipal court of Chicago for a term of two years to the Illinois State Farm for unlawfully having in his possession a certain habit-forming drug; namely, marijuana. By order of the Director of the Department of Public Safety, dated May 22, 1957, Latimer was transferred from the Illinois State Farm to the Illinois State

Penitentiary at Chester. Upon petition by Latimer a writ of *habeas corpus* was issued by this court and directed to the respondent, the warden of the Illinois State Penitentiary at Chester, inquiring into his authority to detain and imprison Latimer. The respondent in his return cites as his authority section 2 of an act in relation to the Illinois State Farm (Ill. Rev. Stat. 1957, chap. 118, par. 15,) which states in part: "Whenever in the judgment of the Director of Public Safety it becomes necessary for the best interests of the administration of the Illinois State Farm, or to relieve crowded conditions therein, any person committed or sentenced thereto may be transferred by the order of the Director to any institution of the Illinois State Penitentiary system for the balance of said commitment or sentence."

Petitioner argues that since he was prosecuted in the municipal court of Chicago by an information, the Illinois constitution inhibits the legislature from providing for his incarceration in the penitentiary system. Section 8 of article II of the Illinois constitution, insofar as applicable to this case, provides, "No person shall be held to answer for a criminal offense, unless on indictment of a grand jury, except in cases in which the punishment is by fine, or imprisonment otherwise than in the penitentiary, \* \* \*: *Provided,* that the grand jury may be abolished by law in all cases." This is an anomalous argument, since the section of the constitution that petitioner cites as authority for limiting the legislature's power to incarcerate him in the penitentiary without granting him the right to a grand jury, gives that very power to the legislature. Since the legislature can constitutionally abolish the right to a grand jury in all cases, we see no reason why they cannot abolish the right in less than all cases. The legislature has, in effect, by the statute under consideration abolished the right to a grand jury as to those who have been transferred from the Illinois State Farm to the penitentiary system, and in so

doing, it has merely exercised in part the prerogative it possesses by virtue of the proviso in section 8 of article II.

The petitioner contends that that part of the statute which allows the Director of the Department of Public Safety to transfer a person from the Illinois State farm to the penitentiary system is giving to that Department a judicial function which is absolutely prohibited by the constitution as interpreted by this court in *People ex rel Martin* v. *Mallary*, 195 Ill. 582, and *People* v. *Montana*, 380 Ill. 596. In the *Mallary case* the court stated, "In the administration of the criminal laws of the State there is no power outside of the courts to authorize the punishment of persons for crime by confinement in the penitentiary, * * *." From this underlying proposition the court concluded that the power to transfer inmates from the Illinois State Reformatory to the Illinois State Penitentiary was void because "* * * the constitution expressly inhibits any person or collection of persons of one department of government from exercising any power properly belonging to either of the others." It is readily apparent from a reading of the *Mallary case* that it was based on the assumption that there was a material difference in the grade of punishment provided by the two institutions there involved.

Because of the long lapse of time since the *Mallary case* was decided and the many changes in the administration of our penal institutions during that time, we feel obliged to reconsider the position taken by the court in that case. It must be kept in mind that practically all prisoners will some day be released. Increasing emphasis has, therefore, been placed upon the responsibility of the prison to prepare men for release. Until the middle of the 16th century prisons were dungeons or strong rooms used merely to detain persons awaiting trial or imposition of sentence, usually death, mutilation, or banishment, and punishment of crime by imprisonment was unknown. But as the definition of crime has varied with changing social theories,

so too has the treatment of prisoners. The philosophy of the manner in which a prisoner should be treated is shifting from physically torturing him to retraining him so that he may be returned to society as a useful individual. Thus, the difference between the various institutions in our penal system is no longer a difference in the degree of discomfort each will impose upon prisoners, but rather a difference in the security or treatment that is needed for particular individuals, since all our penal institutions today seek to rehabilitate the prisoner. In order to use the various institutions to the best practical advantage, it is necessary that certain prisoners be transferred from time to time for the benefit of those around them and themselves. This is the purpose of the statute under consideration.

It is true that no person can be committed by any administrative agency to a penal institution, unless this person has first been given a fair trial by a court and convicted of a crime. However, the legislature has full authority to provide prisons and to determine where prisoners may be sent, and the courts have no discretion as to the place to which criminals may be committed except as the legislature gives it. The very crime of which the petitioner was convicted provides an excellent example of the legislature's authority to determine where prisoners may be sent. At the time he was convicted, the statute governing the offense provided for imprisonment in the county jail. (*People* v. *Hightower,* 414 Ill. 537.) Today this same offense is punishable by imprisonment in the penitentiary. (Ill. Rev. Stat. 1957, chap. 38, par. 192.28—38.) The statute in question does not violate the constitutional prohibition that one branch of our government cannot exercise any power properly belonging to either of the others.

In *People* v. *Montana,* 380 Ill. 596, it was held that certain amendments to the Parole Act were unconstitutional because they allowed the Division of Correction, an administrative body, to change the sentence of a court as con-

tained in the court's recommendation of maximum time to be served. That holding was grounded on the premise that "The power to impose sentence as a punishment for crime is purely judicial." The transfer in this case, however, leaves the sentence in its nature and extent unchanged; the place or method of confinement is alone altered. As we have just explained, the legislature has full authority to provide prisons and to determine where prisoners may be sent.

The petitioner argues, however, that the nature of his sentence has been altered by his transfer to the penitentiary system because it involves consequences to him of a much more serious nature than if he were imprisoned at the Illinois State Farm. In *People* v. *Queen,* 326 Ill. 492, it was stated: "A sentence to the penitentiary renders the convict infamous, while a sentence to the reformatory carries with it no such result. It is therefore a severer grade or degree of punishment than a sentence to the reformatory and involves consequences to the convict of a much more serious character, * * *." This statement in the *Queen* case was not necessary to the decision and is an unfortunate misstatement. The Criminal Code (Ill. Rev. Stat. 1957, chap. 38, par. 587) specifies that "Every person convicted" of certain specified crimes shall be deemed infamous. Hence, it is the *conviction* of these specified crimes and others that have been declared infamous by judicial decision rather than the place of confinement that renders the person infamous.

Petitioner contends that the penitentiary is not an institution for the incarceration of misdemeanants, and since he was convicted of a misdemeanor and is now incarcerated in the penitentiary, he has been denied due process of law as provided for in the constitution. It has long been the rule in this State that the legislature may provide that a misdemeanant might be punished by confinement in the penitentiary. *Thomas* v. *People,* 113 Ill. 531.

The statute under which the petitioners were transferred does not violate the constitution. They are, therefore, remanded to the custody of the warden of the Chester division of the Illinois State Penitentiary.

*Petitioners remanded.*