Frank Allen BOONE, a Minor, by His Next Friend, Newell S. Ferry, Appellant,

v.

John C. DANFORTH, Attorney General, State of Missouri; Fred T. Wilkinson, Director, Department of Corrections; Harold E. Swenson, Warden, Missouri State Penitentiary; W. E. Sears, Director of Training Schools; Walter S. Declue, Supt.; Ray F. French, Supt., Intermediate Reformatory for Young Men, Respondents.

No. 55212.

Supreme Court of Missouri, En Banc.

Feb. 8, 1971.

Opinion Modified on Court's Own Motion March 8, 1971.

Rehearing Denied March 8, 1971.

Phillip Frederick Fishman, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

FINCH, Judge.

Plaintiff, Frank Allen Boone, after being adjudged a delinquent juvenile and committed to the State Board of Training Schools, was transferred by said board by administrative order, pursuant to § 219.230 (2),[1] to the Classification and Assignment Division of the Department of Corrections and thereafter was confined in various institutions operated by that department. He brought suit in the Circuit Court of Cole County seeking a determination that this transfer without a judicial hearing was unconstitutional and invalid. He appeals from an adverse judgment of the Circuit Court. We reverse.

Plaintiff's petition was in two counts. Count I sought a declaratory judgment that a transfer of any juvenile, including plaintiff, from the State Board of Training Schools and its institution for juveniles to the Department of Corrections and its adult correctional institutions without any judicial hearing and determination violates his constitutional rights under the Fifth and Fourteenth Amendments to the Constitution of the United States and his rights under Art. I, § 10 of the Constitution of Missouri, 1945, V.A.M.S. Count II was a petition for writ of habeas corpus directed to Warden Swenson.

The stipulated facts show that on April 27, 1966, plaintiff, then 14, was adjudged by the Juvenile Court of the City of St. Louis to be delinquent by reason of petty larceny and trespass, and was committed by that court to the State Board of Training Schools. He was not prosecuted as an adult, pursuant to § 211.071.

On February 6, 1967, the State Board of Training Schools, pursuant to § 219.230(2), and without any judicial hearing, ordered plaintiff transferred "from the Missouri Training School for Boys to the Classification and Assignment Division of the Department of Corrections at Jefferson City, Missouri, and held in custody therein until such time as he may be discharged by due course of law." The transfer was pursuant to recommendation of the Classification Committee of the Training Schools and was with the concurrence of the Governor. It recited that the conduct of plaintiff had been such as to demonstrate that he was incorrigible and not amenable to reformation afforded at the Training School for Boys and that his presence was detrimental to the discipline and welfare of other boys at the school. After that transfer, the plaintiff first was placed by the Department of Corrections in the Algoa Intermediate Reformatory for Young Men. Subsequently, he was transferred from there to the Training School for Men at Moberly, and ultimately to the State Penitentiary for Men in Jefferson City.

While Boone was incarcerated in the State Penitentiary he instituted this suit. Thereafter, and before the hearing of this case by the Circuit Court, he was released from the Penitentiary on order of the State Board of Training Schools and placed under supervision of a Placement Officer pursuant to a Training School Placement Plan, his release being conditioned on compliance with specific written rules and instructions. In its findings and judgment, the trial court, noting that petitioner had been released from the Penitentiary and was no longer in the custody of the Warden, quashed the writ of habeas corpus. With reference to the count seeking a declaratory judgment, the court held that § 219.-230(2) was constitutional and that plaintiff was not entitled to a judicial hearing as a

---

1. All statutory references are to V.A.M.S.

condition to his transfer from the State Board of Training Schools to the correctional institutions operated by the Department of Corrections.

■ We first consider two preliminary questions raised by respondents which go to the question of whether we should consider this appeal on its merits. They first suggest that notice of appeal was not timely filed and that the appeal should be dismissed for this reason. We overrule this contention. This case was heard by the court without a jury and judgment was entered October 14, 1969. No motion for new trial was filed and the judgment became final thirty days after its entry. Appellant had ten days thereafter for filing a notice of appeal. Gross v. Merchants-Produce Bank, Mo.App., 390 S.W.2d 591. The fortieth day, which was November 23, fell on a Sunday but that day is not counted under Supreme Court Rule 44.01. Consequently, the notice of appeal which was filed on November 24, 1969, was timely.

■ Secondly, respondents suggest that the questions presented on appeal may be moot for the reason that plaintiff is not now in any institution and if his parole is revoked he will be returned, pursuant to the release documents, "to the Training School for further training." The respondents' brief recognizes that the question presented is an important one and says that they are not opposed to having it decided but feel that the question of mootness should be raised. We have concluded not to dismiss the appeal on that basis. This is a continuing question due to the fact that other transfers of juveniles under § 219.-230(2) occur from time to time. This same question has arisen in the past without being decided and the identical question is presented in three original habeas corpus

proceedings filed in this court on January 6, 1971.[2] Furthermore, plaintiff is still subject to parole, which could be revoked, and he could be again committed by the State Board of Training Schools to the Department of Corrections and its adult institutions. Under such circumstances, it is appropriate to decide the issue instead of dismissing the case as moot. · Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1; Pierce v. La Valle, 2 Cir., 293 F.2d 233; Friend v. United States, 128 U.S.App.D.C. 323, 388 F.2d 579; Matthews v. Hardy, 137 U.S.App.D.C. 39, 420 F.2d 607.

What, then, of the basic issue presented on this appeal, namely, the validity of the transfer of plaintiff from the State Board of Training Schools and its · institution at Boonville to the Department of Corrections and its adult correctional institutions, and of the statute under which that transfer was made? Was this, as the State contends, merely an authorized administrative decision to transfer plaintiff from one institution to another because of his asserted misbehavior at the first? Or was this such a change in commitment and custody, without any notice, hearing or judicial determination, as to violate plaintiff's constitutional rights?

The original proceeding against plaintiff in the Juvenile Court was pursuant to Chapter 211. Section 211.071 of that Chapter provides that after a hearing the Juvenile Court may determine that the juvenile is not a fit subject to be dealt with under the Juvenile Code, in which event he is transferred to the Circuit Court and prosecuted under the general law. He then is tried as any other defendant charged with a crime and is accorded all the procedural and constitutional safeguards. If convicted in such a trial of an offense punishable by

---

2. In Cases 56445 and 56446 the minors, originally committed to the State Training School for Boys, were transferred by administrative order to the Missouri Department of Corrections which department then ordered them detained in the State Penitentiary. In Case 56447 the minor, similar committed and thereafter administratively transferred, was ordered by the Department of Corrections to be detained at Algoa Intermediate Reformatory.

imprisonment in the custody of the Department of Corrections, he may be so sentenced and imprisoned in any of the correctional institutions operated by that department. If, however, the Juvenile Court does not order the juvenile prosecuted under the general law, then the court, under § 211.181, has several alternatives if it finds the juvenile to be either delinquent or neglected. Here, the Juvenile Court chose the alternative of committing plaintiff to the custody of the State Board of Training Schools (created by § 219.020), as expressly authorized in § 219.160.

■ The Juvenile Court could not have ordered plaintiff, as a delinquent juvenile, committed to the Department of Corrections (created by § 216.010) or to any of the institutions which that department operates. The Juvenile Court had absolutely no right or authority to order plaintiff so committed. The issue squarely raised and presented by this appeal is whether the State Board of Training Schools, based on conduct of plaintiff while at Boonville, may by administrative order (and without any judicial hearing or determination of any kind) commit custody of plaintiff to the Department of Corrections with resulting imprisonment in Algoa, Moberly and the Penitentiary, thereby doing that which the Juvenile Court could not have done.

As previously noted, this is a case of first impression in Missouri on this question. Other courts have considered such administrative transfers with varying results. We mention some of those cited. The Supreme Court of Iowa in Wilson v. Coughlin, 259 Iowa 1163, 147 N.W.2d 175, upheld the right of that State's Board of Control administratively, under an Iowa statute, to transfer a delinquent juvenile from the Training School for Boys to the Men's Reformatory. However, a strong and persuasive dissent in the case said, 147 N.W.2d l. c. 183: "No one would contend that the juvenile court could, under our present law, find a juvenile to be delinquent

and commit him to the Anamosa Reformatory without offering an opportunity for a jury trial. Can the state, in the name of administrative efficiency do indirectly, what it cannot, in the name of law enforcement, do directly? It would appear that this statute is not within the *parens patriae* spirit that makes the juvenile custodial provisions constitutional."

Likewise, in Harwood v. State, 184 Tenn. 515, 201 S.W.2d 672, the Supreme Court of that state upheld an administrative transfer of a juvenile from a reformatory for girls to the State Penitentiary. It stated that the statute was for the purpose of enabling control of the incorrigible and was to protect the institution and its inmates, not add punishment.

In contrast, the Supreme Court of Vermont in the case of In re Rich, 125 Vt. 373, 216 A.2d 266, held that an administrative transfer from the school for juveniles to the state penal institution, not founded upon a criminal prosecution and conviction, attended by the constitutional guaranties appropriate to such a proceeding, could not stand.

Nor are the federal cases dealing with this issue uniform in their result. For example, in Sonnenberg v. Markley, 7 Cir., 289 F.2d 126, the court held that a juvenile delinquent committed under a federal statute to the custody of the Attorney General of the United States by the judgment of the court could be transferred by him from the National Training School for Boys to the Penitentiary at Terre Haute, even though the petitioner claimed that the latter institution had no facilities for juveniles. The court recognized a split in authority among the district courts but agreed with the reasoning in the cases holding that once committed to the custody of the Attorney General, the nature of the custody and where the juvenile was to be confined was in the discretion of those in charge of rehabilitation. One district court case reaching a contrary result is United States ex rel. Stinnett v. Hegstrom, 178 F.Supp. 17.

In another federal case, Shone v. Maine, 1 Cir., 406 F.2d 844, the court considered an administrative transfer of a juvenile under the laws of the State of Maine. In that case the juvenile was transferred from the Maine Boys Training Center to the Men's Correctional Center. The First Circuit held that such transfer denied him due process and equal protection of the law. That judgment was vacated subsequently by the United States Supreme Court, Maine v. Shone, 396 U.S. 6, 90 S.Ct. 25, 24 L.Ed.2d 6, with directions to dismiss the case as moot. Meanwhile, the State of Maine had amended its statute so as to provide for a hearing with counsel and a judicial determination before any transfer to the Men's Correctional Center.[3]

■ Other than in Maine v. Shone, supra, wherein it merely directed that the case be dismissed as moot, the United States Supreme Court apparently has not dealt with this issue of the right to transfer administratively a juvenile from an institution for juvenile delinquents to a correctional institution to which the committing juvenile court could not have sentenced him. However, plaintiff cites as pertinent the decision of the Supreme Court in Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620. In Baxstrom petitioner was convicted of a felony and sentenced to two and one-half years in a state prison. After serving two years thereof, he was certified by a prison physician as insane and sent to the Dannemora State Hospital, which was an institution under the control of the Department of Corrections for the purpose of caring for prisoners declared mentally ill while serving a criminal sentence. After his sentence had been completed, petitioner was retained at Dannemora, based on an administrative determination that he was not suitable for care in a civil mental hospital. The Supreme Court, on certiorari, held that petitioner was denied equal protection of the laws by the statutory provision wherein he could be civilly committed at the end of his prison sentence without the jury review available to others civilly committed in New York, and also by his commitment to an institution maintained by the Department of Corrections beyond the end of his sentence, without a judicial determination that he was dangerously mentally ill, such as that afforded others so committed who were not nearing the end of a penal sentence. Obviously, the factual situations in Baxstrom are not the same as here, but the principles underlying that decision are persuasive that an administrative transfer of a juvenile (without any judicial hearing or determination) from the Missouri Board of Training Schools to the Department of Corrections and its separate institutions, to which others not in the custody of the Board of Training Schools could not be committed except following a judicial hearing and determination, does constitute a denial of equal protection and due process. In this connection, see also Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326.

■ We recognize that necessarily state correctional institutions must have wide discretion in deciding on the appropriate classification and assignment of persons committed to their custody. In the case of the Department of Corrections, the General Assembly has so recognized by providing in § 216.208 for those convicted of felonies involving imprisonment in a state institution to be committed to the Department of Corrections rather than a particular institution, and has provided in §§ 216.209, 216.-211 and 216.212 for the Department to classify prisoners and assign them to the correctional institution within its supervision that is best suited for the handling and rehabilitation of those particular prisoners. Likewise, the General Assembly has provided in § 219.140 that the Board of Training Schools may classify juveniles committed to its care and may separate, as necessary, those readily amenable to dis-

3. 15 M.R.S.A. § 2611(5).

cipline and correction from those who may be potentially vicious or criminally inclined. What that board may do as a practical proposition with regard to separation of juveniles and assignment of them to separate locations or institutions which it operates is limited by whatever facilities are provided to the board, but within the limitations of such facilities as it has the Board of Training Schools is provided wide discretion in classifying, placing and training the juveniles committed to its care.

In this case, however, we are not confronted with a situation wherein the Board of Training Schools has transferred a juvenile between institutions or locations, both of which are under the supervision and control of said board, and both of which would be within the authorized commitment by the Juvenile Court. Rather, the board has acted under § 219.230(2) wherein the General Assembly authorized it, for the purpose of discipline, to transfer a juvenile to an adult correctional institution under the Department of Corrections. When so transferred the minor "shall be subject in all respects to the discipline of the adult correctional institution to which he is transferred and shall be entitled to all the rights provided for persons committed to such institution." § 219.230(2). He is a regular member of the population of the institution while he is there.

The institution operated by the Department of Corrections is one to which the juvenile was not and could not have been committed by the Juvenile Court. Such transfer was based, not on the original adjudication that plaintiff was a delinquent juvenile, but rather on the basis of an administrative determination of the conduct of plaintiff while in the custody of the Board of Training Schools. There is no provision for notice of hearing or for any judicial determination with respect to those charges. Yet under § 219.230(2) the juvenile, as a result of the administrative order of the State Board of Training Schools, was transferred to the Department of Corrections (to be incarcerated in its institu-

tions), to which the Juvenile Court could not have committed him, and to which, under existing law, only the Circuit Court may commit those who have been prosecuted and sentenced as adults. Such administrative transfer constituted a denial of due process and equal protection. Accordingly, we hold that § 219.230(2) is unconstitutional as in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and Art. I, § 10 of the Constitution of Missouri, 1945.

Judgment reversed.

DONNELLY, SEILER, MORGAN, and BARDGETT, JJ., concur.

HOLMAN, J., dissents in separate dissenting opinion filed.

HENLEY, C. J., dissents and concurs in separate dissenting opinion of HOLMAN, J.

HOLMAN, Judge (dissenting).

I respectfully dissent. First, I disagree with the principal opinion on the issue of mootness. I think the case is moot and should be dismissed. It is my view that the function of this court is to decide actual controversies and not to render advisory opinions. Appellant is no longer in custody and hence has no personal interest in the constitutionality of § 219.230(2). No relief can be granted to him in this action. In order to say he has an interest it must be assumed that between now and his 21st birthday he will violate the law or other terms of his parole and for that reason will be returned to the training school, and that he will thereafter again become an incorrigible and be transferred by the State Board of Training Schools to the custody of the Department of Corrections. I do not think it is proper to make those assumptions, and certainly appellant should not be heard to advocate that those things will occur. In other words, appellant should not be permitted to use the already overburdened

judicial machinery of this state in order to seek a judgment which would be beneficial to him only in the event he would thereafter violate the law or be guilty of other misconduct which would cause his parole to be revoked and a transfer of his custody from the training school.

I also disagree with the principal opinion on the merits. That opinion adopts what is said to be the minority view and is based on a hypertechnical application of constitutional principles and fails to properly consider the reasonable necessity for custodial provisions required for the protection of the persons committed to the training school. It should be kept in mind that the statute in question was enacted in order to provide an appropriate place of confinement for inmates found by the Board to be unmanageable or otherwise unfit for training school custody. It was enacted to provide protection for the unruly inmate and all others in the school who would be subjected to his unsavory influence. It is simply a custodial question; and while such an inmate is temporarily under the control of the officials of the adult institution the Board is vested with general control and may, in its discretion, parole him as it did in this case. There is no change in the judgment which originally caused the confinement and no change in the length of such period. By reason of his transfer to an adult institution such an inmate would not thereafter become, to use a slang expression, an "ex-con." The statute provides a reasonable and necessary means whereby the officials of the training school may endeavor to maintain reasonable discipline and a generally wholesome atmosphere in which reformation of many of the inmates may occur. Since the transfer order of the Board (with the approval of the Governor) relates only to custody it is not a usurpation of judicial power.

The views heretofore expressed are supported by many cases which have considered contentions similar to those advanced by appellant. A very similar case is Sheehan v. Superintendent of Concord Reformatory, 254 Mass. 342, 150 N.E. 231, wherein the transfer statute was said to be unconstitutional because it "was a delegation of judicial functions to an administrative board, and was an imposition of a greater, additional or substituted sentence for that prescribed by the court." 150 N.E. l. c. 232. In ruling to the contrary the court said: "It would frustrate this general humanitarian scheme for the administration of the Industrial School for Boys if those not responsive to the reformative methods of the school must continue there in association with other boys yielding to its influences. Manifestly it would be within the power of the Legislature to provide for the segregation of such refractory inmates. There hardly could be question that in appropriate buildings more rigorous treatment and closer confinement might be provided for such inmates as a part of the regular course of the school. No substantial reason is perceived why such segregation may not be accomplished also by transfer to another state institution adapted to the needs of such inmates. There is no constitutional prohibition against reasonable enactments by the Legislature correlating the reformatory and penal institutions of the commonwealth so as to render them to a certain extent a unified system and to prevent unnecessary duplication of buildings or administration. * * * The determination of the question whether the petitioner after his sentence was 'unmanageable or an improper person' longer to remain at the industrial school is not necessarily judicial in nature. It stands on the same footing as the decision of numerous questions touching the discipline of inmates of reformatory or penal institutions. It was administrative in its essence." 150 N.E. l. c. 233. The transfer statute was also held to be constitutional in Harwood v. State, 184 Tenn. 515, 201 S.W.2d 672, the court saying that "[i]t was clearly foreseen by the Legislature when the Juvenile Court and other reformatory statutes were enacted that provision should be made for screening incorrigibles from other inmates who were being given an opportunity to be

trained in good citizenship. With this in view, it was provided in Code section 4707 that the unruly, the incorrigible, whose baneful influence was detrimental of the best interest of the institution, should be placed elsewhere. It was a matter of wise administration of an institution erected for the betterment of wayward young people, and not an added punishment for crime. The constitutional provision which protects the citizen against imprisonment without an indictment and trial by jury is not applicable to the administrative control of penal or other corrective institutions." 201 S.W.2d 1. c. 674. Other cases in which transfer statutes are upheld are Cassidy, Petitioner, 13 R.I. 143; Wilson v. Coughlin, 259 Iowa 1163, 147 N.W.2d 175, and Glazier v. Reed, 116 Conn. 136, 163 A. 766. Also, it is noted that in Sonnenberg v. Markley, 7th Cir., 289 F.2d 126, the court upheld the power of the Attorney General to order a juvenile delinquent to be confined in or transferred to an adult prison.

As I understand it, the principal opinion holds that it is constitutionally impermissible to transfer the person of a juvenile committed to the custody of the State Board of Training Schools to an institution operated by the Department of Corrections, although the juvenile has become incorrigible and a menace to himself, to other juvenile inmates, and to the training center itself unless the juvenile is accorded "due process" and "equal protection" as required by the state and federal constitutions in criminal prosecutions. In other words, the principal opinion apparently would require, as "due process", before a transfer could be made: (1) a law creating or defining the requirements for transfer such as, for example, incorrigibility; (2) an impartial tribunal of competent jurisdiction; (3) an accusation in due form; (4) notice and an opportunity to defend with counsel; (5) counsel to be provided by the state if the juvenile is a pauper; (6) a trial by jury ac-

cording to established procedures; and (7) proof by competent evidence of the requirements for transfer. These are, in general, the elements of "due process" in criminal prosecutions. But, this is not a "criminal prosecution" within the meaning and application of the "due process" clause of either the Fifth or Fourteenth Amendments to the Constitution of the United States or Art. I, § 10, Constitution of Missouri; it is no more than an administrative transfer to another place of confinement,[4] and does not rise to constitutional dignity.

I find nothing in the language of either the Missouri Constitution or the amendments to the U. S. Constitution above referred to which either requires or contemplates the result reached by the principal opinion.

---

4. See, in addition to above cited cases, People ex rel. Latimer v. Randolph, 13 Ill.2d 552, 150 N.E.2d 603; Ex parte Burns, 88 Okl.Cr. 270, 202 P.2d 433; Moffett v. Hudspeth, 165 Kan. 656, 198 P.2d 153.