**James MOORE and Anthony Flowers, by their Next Friend, Leonard Klaif, Plaintiffs,**

v.

**Charles C. HAUGH, Warden, Iowa State Men's Reformatory, and James M. Gillman, Commissioner, State of Iowa Department of Social Services, Defendants.**

**Civ. No. 72–C–5–CR.**

United States District Court, N. D. Iowa, Cedar Rapids Division. May 9, 1972.

L. Vern Robinson, Iowa City, Iowa, for plaintiffs.

Lorna L. Williams, Sp. Asst. Atty. Gen., Des Moines, Iowa, for defendants.

Before VAN OOSTERHOUT, Circuit Judge, McMANUS, Chief District Judge, and STUART, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McMANUS, Chief District Judge.

Plaintiffs, James Farrell Moore (Moore) and Anthony Curtis Flowers (Flowers), juveniles presently confined in the Men's Reformatory at Anamosa, Iowa (Anamosa) brought this action for declaratory and injunctive relief attacking the constitutionality of Section 218.91 Code of Iowa 1971. A three-judge court was convened, evidentiary hearing held and briefs and arguments submitted.

### FINDINGS OF FACT

1. At all times material to this action plaintiffs Moore and Flowers were juveniles under the age of 18.

2. On April 17, 1968 after a hearing in the Juvenile Court of Scott County, Iowa, Moore was adjudged a delinquent child and committed to the State Training School for Boys, Eldora, Iowa (Eldora).

3. On May 1, 1964 after a series of hearings in the Juvenile Court of Woodbury County, Iowa, Flowers was adjudged a delinquent child and committed to Eldora.

4. On November 24, 1971 pursuant to proceedings instituted under Section 218.91 [1] Code of Iowa 1971, Moore was

---

1. Section 218.91 provides in part:
   "The director of the division of child and family services with the consent and approval of the director of the division of corrections of the department of social services may order the transfer of inmates of the training school for boys to the men's reformatory for custodial care whenever it is determined that such action will be conducive to

transferred to Anamosa for custodial care by the State Court. The transfer was ordered after hearing and a finding by the State Court that it would be conducive to the welfare of the other inmates of Eldora. Plaintiff received notice of the hearing, was represented by counsel and given the rights of confrontation and cross examination.

5. On June 9, 1970 pursuant to proceedings instituted under Section 218.91 Code of Iowa 1971, Flowers was transferred to Anamosa for custodial care by the State Court. The transfer was ordered after hearing and a finding by the State Court that it would be conducive to the welfare of the other inmates at Eldora. Plaintiff received notice of the hearing, was represented by counsel and given the rights of confrontation and cross examination.

6. Plaintiffs are presently confined at Anamosa where their care and treatment does not differ in any material respect from that given other inmates at Anamosa.

7. Eldora is a juvenile correctional institution for boys between the ages of twelve and eighteen whose primary purpose is to modify undesirable habits and to rehabilitate inmates.

8. Anamosa is a maximum security institution for first offenders under the age of 31 containing facilities for restraint, training and education for the purpose of punishing and rehabilitating inmates.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and subject matter. 28 U.S.C. § 1343, 2281; 42 U.S.C. § 1983.

2. A presumption of constitutionality attaches to state legislative enactments where as here no suspect class nor infringement of fundamental rights are involved. See e. g. Schilb v. Kuebel, 404 U.S. 357, 364, 92 S.Ct. 479, 30 L. Ed.2d 502 (1971); McDonald v. Board of Election Commissioners, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969); McGowan v. Maryland, 366 U. S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1960).

3. Section 218.91 Code of Iowa 1971 does not violate[2] either the due process[3] or equal protection clauses[4] of the 14th Amendment to

---

the welfare of the other inmates of the school. Such transfer shall be effected by application in writing to the district court, or any judge thereof, of the county in which the said training school is situated. Upon the granting of the order of transfer, the transfer shall take place. The county attorney of the said county shall appear in support of such application. The cost of the transfer shall be paid from the funds of the training school for boys. Subsequent to a transfer made under this section, the person transferred shall be subject to all the provisions of law and regulations of the institution to which he is transferred, and for the purposes of chapter 745 such person shall be regarded as having been committed to the institution."

2. Plaintiffs also assert violations of the 5th and 6th Amendments which are considered as part of the 14th Amendment claims.

3. The standard of due process used where juveniles are concerned is that of fundamental fariness. McKiever v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Using this standard the United States Supreme Court has required that juveniles be afforded appropriate notice, the right to counsel, right to confront and cross-examine witnesses and the privilege against self-incrimination in those stages of juvenile proceedings which are adjudicative in nature. McKeiver v. Pennsylvania, supra; In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 2d 527 (1967). Here, unlike the juveniles in *Shone* and *Boone* these rights were accorded to plaintiffs. Further, unlike the court in *Shone* we have no difficulty reading these procedural safeguards into the Iowa Statute. See generally Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968); Shone v. State of Maine, supra 406 F.2d at 849.

4. Equal protection does not require that all persons be dealt with identically, but only that if distinction is made it have some relevance to the purpose for which the classification is made. Here the court

**1266**

United States Constitution. See e. g. Sonnenberg v. Markley, 289 F.2d 126 (7th Cir. 1961); Arkadiele v. Markley, 186 F.Supp. 586 (S.D.Ind.1960); Clay v. Reid, 173 F.Supp. 667 (D.D.C.1959) appeal dismissed 106 U.S.App.D.C. 298, 272 F.2d 527 (1959); Harwood v. State, 184 Tenn. 515, 201 S.W.2d 672 (1947); Wilson v. Coughlin, 259 Iowa 1163, 147 N.W.2d 175 (1966). Contra, Shone v. State of Maine, 406 F.2d 844 (1st Cir. 1969); United States ex rel. Stinnett v. Hegstrom, 178 F.Supp. 17 (D.Conn. 1959); White v. Reid, 125 F.Supp. 647 (D.D.C.1954); Boone v. Danforth, 463 S.W.2d 825 (S.Ct.Mo.1971).

It is therefore ordered

Dismissed.

does not find it unreasonable to distinguish between juveniles proceeded against as juveniles and those proceeded against as adults regarding procedures for their committment to Anamosa. The basis of their custody by the state has not changed. They are still eligible for parole at any time and may not be held beyond the age of 21. They still receive counsel and have vocational training available to them.

The primary change has been in the security surrounding their confinement. Further, this court is in agreement with Wilson v. Coughlin, supra, that there is no constitutional prohibition in confining juveniles with convicted felons where as here adequate safeguards are present. See generally Baxstrom v. Herold, 383 U.S. 107, 111, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966).