THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CURTIS HENDERSON (Impleaded), Defendant-Appellant.

First District (3rd Division)    No. 61086(B)

Opinion filed June 17, 1976.

James J. Doherty, Public Defender, of Chicago (William D. Trude and Marilyn D. Israel, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:
Curtis Henderson appeals from an interdivisional transfer order entered by the Circuit Court.

Henderson, a juvenile, was convicted of murder and attempt armed robbery. He was sentenced to the Department of Corrections, Juvenile Division, and was confined at the Sheridan Correctional Center from July 1973 to November 1974. In the latter month, a petition was filed by the Juvenile Division (pursuant to Ill. Rev. Stat. 1973, ch. 38, par. 1003—10—7(a)) to transfer him to the Adult Division of the Department of Corrections. The petition stated that the Sheridan Correctional Center was not capable of handling him because he refused supervision and conducted himself in a hostile manner. Attached to the petition were institutional reports of his conduct and his potential for rehabilitation.

Henderson contends that he was denied due process of law because the trial court did not give him adequate time to prepare for the hearing conducted on the interdivisional transfer petition; that the statute under which he was transferred is unconstitutional because it delegates legislative authority to the judiciary and violates article I, section 2, of the Constitution of the State of Illinois and the fourteenth amendment to the Constitution of the United States; that the court erred in granting the petition because the only evidence supporting it was inadmissible hearsay, and that the evidence failed to prove that the Sheridan Correctional Center was incapable of controlling him.

■■ When the petition was called on the morning of November 7, 1974, the trial court appointed an assistant public defender to represent Henderson. The assistant immediately requested a continuance, saying that he was unfamiliar with the case and needed time to prepare. The court said that it would give him time to talk to his client. The case was not called again until 3:30 p.m.—an interlude of about five hours. The assistant public defender again asked for a postponement. The court refused and the hearing commenced. Henderson contends that by denying him a continuance the court deprived him of the effective assistance of counsel and denied him due process, since his court-appointed attorney needed time not only to talk to him, but to interview witnesses and to study the statutes and case law relating to the Juvenile Division of the Department of Corrections. However, at 6 p.m., after the State had presented its case, the court continued the hearing for 13 days so that the defendant could prepare his defense. It allowed the defendant until November 14 to file discovery motions and scheduled the next hearing for November 20. On November 14 the defendant's attorney filed a discovery motion but asked that no action be taken on it because, as he perceived the case, the motion had become moot. On November 20 the defendant presented no evidence and made no motion for a further continuance. Although the court may have been mistaken in denying the defendant's first motions for a continuance, no harm resulted from the denial. The court subsequently corrected any error that may have

occurred by granting him an extension of approximately two weeks, which gave him an opportunity to controvert the reports of his behavior and otherwise prepare his defense. *People v. Coleman* (1970), 45 Ill. 2d 466, 259 N.E.2d 269.

Central to the consideration of the defendant's other contentions are two statutory provisions, sections 3—10—7(a) and 5—8—6(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, pars. 1003—10—7(a) and 1005—8—6(c)). The pertinent part of section 3—10—7(a) states:

> "Upon petition of the Juvenile Division, a committing court may, after a hearing with opportunity to be heard and defend, order a person who is 17 years or older and who was originally committed to the Juvenile Division under Section 5—8—6 [Ill. Rev. Stat., 1973, ch. 38, par. 1005—8—6(c)] to be transferred to the Adult Division. * * *"

Section 5—8—6(c) provides:

> "All offenders under 17 years of age sentenced to imprisonment shall be committed to the Juvenile Division of the Department of Corrections * * *. Such order of commitment shall be the sentence of the court which may be amended by the court while jurisdiction is retained * * *. The committing court shall retain jurisdiction of the subject matter and the person until he reaches the age of 21 unless earlier discharged. However, upon request of the Juvenile Division of the Department of Corrections after a person has reached 17 years of age, the court may conduct a hearing with opportunity to the offender to be heard and defend and order him transferred or committed to the Adult Division of the Department of Corrections."

The State raises two preliminary objections to the defendant's claim that the first of these statutes is unconstitutional: first, that this court should dismiss the defendant's appeal because the interdivisional transfer order is nonappealable; and second, that the defendant lacks standing to challenge the constitutionality of the statute because the issue was not raised in the trial court.

■■■ The State's argument that the transfer order was nonappealable runs directly contrary to *People v. Spears* (1971), 50 Ill. 2d 14, 276 N.E.2d 322, where the court allowed a juvenile imprisoned at the Sheridan Correctional Center to appeal from the order transferring him to an adult prison. The nonappealability argument may thus be rejected; however, the lack of standing argument is valid. It is a general rule of appellate procedure that failure to raise an issue in the trial court precludes its discussion on appeal. (*People v. Green* (1969), 118 Ill. App. 2d 36, 254 N.E.2d 663.) This waiver rule applies to an issue pertaining to a statute's constitutionality. (*People v. Bratu* (1970), 121 Ill. App. 2d 439, 259 N.E.2d

607.) An emerging exception to this rule is that a reviewing court may consider the constitutionality of a statute under which a defendant has been convicted even though no objection on this ground was made at his trial. (*People v. Graves* (1974), 23 Ill. App. 3d 762, 320 N.E.2d 95.) Although we are concerned with a hearing on a motion rather than a trial, there is no reason why the considerations of orderly procedure are any less compelling. The only time the Constitution was mentioned in the trial court was when the judge fleetingly and parenthetically remarked that there had been no violation of the defendant's constitutional rights. Even when the judge made this observation the defendant said nothing. Under these circumstances, we conclude that the constitutional issues urged by the defendant cannot be raised in this court.

The defendant makes two arguments concerning the nature of the evidence produced against him: (1) that it was impermissible hearsay and (2) that it did not meet the State's burden of proof. We consider both of these arguments unsound. At the November 7 hearing, John Saunders, a correctional counselor for the Department of Corrections, stationed at the Sheridan Correctional Center, testified that Henderson had resided at Sheridan for 15 months. During this period he had been cited 14 times for alleged violations of Sheridan's rules and regulations. These violations had been referred to the Institutional Adjustment Committee in accordance with section 3—10—8(g) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1003—10—8(g)). To the witness' knowledge no other juvenile inmate had received as many referrals in so short a time. The alleged infractions included insulting a youth supervisor and threatening to throw urine in his face; flooding his cell by excessively flushing the toilet; twice refusing to get out of bed for school; telling a youth supervisor to mind his own business; fighting in the gym locker room with another young inmate; fighting with another prisoner in the television room; stealing newspapers from the library; walking out of school and disobeying a supervisor's direct order to return to class; talking obscenely to a youth supervisor; refusing to return to his room after receiving medication, and threatening kitchen employees by stating that he planned to go into the kitchen and take anything he wanted.

■■ Saunders read part of the referrals describing Henderson's conduct. None of the disciplinary reports were written or prepared by him and he had neither witnessed the violations nor attended the hearings of the committee that considered them. Henderson's objections to Saunders' testimony and to the reports read by him were overruled. Saunders' testimony was hearsay and the reports, signed by various staff members, were also hearsay. The defendant argues that he was denied confrontation with his accusers and that the right given him by the statute

(par. 1003—10—7(a)) "to be heard and defend" was eroded when written reports were allowed into evidence of which the testifying witness had no knowledge. Evidence not competent for the purpose of determining guilt or innocence may be relied upon for the purpose of determining sentence. Rigid rules of evidence need not be followed in sentencing hearings and hearsay evidence is admissible. (*People v. Dennis* (1970), 47 Ill. 2d 120, 265 N.E.2d 385; *People v. Forman* (1969), 108 Ill. App. 2d 482, 247 N.E.2d 917.) Although Henderson's sentence had been fixed, this was a sentencing hearing in the sense that a new place of confinement was being determined. The statute (par. 1005—8—6(c)) states that the committing court retains jurisdiction of the subject matter and the person of a juvenile until he reaches the age of 21. We see no reason why hearsay, permissible when the length of his sentence is being considered, should not be equally permissible when the place of his confinement is being considered.

■■ For his violations at Sheridan, Henderson was punished for about 64 days. Sometimes he was removed from his residential program, sometimes confined to his room, and sometimes segregated in another building. Finally, Sheridan officials decided to petition for a transfer order. That this petition was properly granted by the trial court who found that all the infractions had, in fact, occurred, is indicated by *People ex rel. Latimer v. Randolph* (1958), 13 Ill. 2d 552, 150 N.E.2d 603. In *Latimer,* a prisoner challenged his transfer from the Illinois State Farm to a State penitentiary under a broadly worded statute that permitted a transfer whenever it appeared that such was "necessary for the best interests of the administration of the Illinois State Farm, or to relieve crowded conditions therein * * *." (13 Ill. 2d 552, 554.) The reviewing court did not explain why Latimer was transferred, but it did note that the difference among Illinois prisons is not "a difference in the degree of discomfort each will impose upon prisoners, but rather a difference in the security or treatment that is needed for particular individuals, since all our penal institutions today seek to rehabilitate the prisoner. In order to use the various institutions to the best practical advantage, it is necessary that certain prisoners be transferred from time to time for the benefit of those around them and themselves." (13 Ill. 2d 552, 556.) The court implied that only very limited restrictions would apply to transfers from one prison to another: "The transfer in this case * * * leaves the sentence in its nature and extent unchanged; the place or method of confinement is alone altered." (13 Ill. 2d 552, 557.) Similarly, Henderson's sentence remained the same. Only the place of his confinement changed. Also, the evidence indicated, as the hearing judge found, that Henderson was refusing rehabilitation and was constantly causing trouble for himself, other

inmates and the youth supervisors around him. In light of the evidence offered at the hearing and the principles stated in *Latimer*, the court did not err in approving the interdivisional transfer petition.

The petition alleged the Sheridan Correctional Center was unable to handle Henderson because of his hostile manner and his refusal to accept supervision. However, Saunders stated that in his opinion Henderson probably could be handled physically, but that Sheridan's inmates were changing from juvenile to adult and that it was no longer the maximum security institution that it was when Henderson was first committed. From this, the defendant argues that the charge of misconduct was a subterfuge and that the real purpose in wanting to remove him from Sheridan was to conform to public policy in Illinois against commingling adult and juvenile inmates. This may well have been a contributing factor in the department's decision to petition for his transfer, but the Department of Corrections was not seeking to transfer him to another juvenile facility but from a juvenile to an adult one, and the fact remains that the evidence of his incorrigibility justified the transfer order.

The judgment is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.